M’Girk, C. J.,
delivered the opinion of the Court.
This was an indictment for assault and battery against Ledford. The defendant moved to quash the indictment, and the motion was sustained. The case is brought to this Court by a writ of error. On the 19th February, Í825, the General Assembly of the State passed an act to allow Justices of the Peace jurisdiction in cases of breach of the peace upon certain conditions ¡ by which act it is provided, that when complaint is made on oath by any person, to a Justice of the Peace, of an assault and battery, the Justice shall issue his warrant against the offender, shall proceed to a trial of the offence, and if the defendant is found guilty, shall impose a fine to the use of the county of not less than $5. The third section provides for a jury of twelve men to try the offence, and authorizes them to assess the fine so as not to exceed $80. The act then provides for collecting the fine, and says the defendant shall be imprisoned till the fine and costs are paid. The sixth section provides for an appeal to the Circuit Court. The act also provides that the defendant may have his election to he tried before the Justice or before the Circuit Court. The tenth section of the act provides, that nothing contained in the act, shall prevent the grand juries from presenting any person guilty of any offence against the public peace unless such person may have been punished therefor, under the provisions of this act, in such manner as .may be a bar to further proceedings for the offence. At *76 the time this act took elFect, the offences of assaults and batteries were by law indictable in. the Circuit Court by the finding of a grand jury. This Court in the case of Stein v. The State, declared this act to 'be unconstitutional and void. See 2 Mo. R., 67.
By an act passed 18th January, 1831, it is declared, “ that hereafter no assault, battery, affray, riot, rout, or unlawful assembly, shall beheld or considered an indictable offence, but the same shall be prosecuted and punished in a summary mode before a Justice of the Peace.” Then some cases of an aggravated nature are saved out of the act. By the second section, the act of 182S is revived, and the jury may assess the fine, &c.
It is assigned for error on the part of the State, that this last act and that of 1825, are both repugnant to the Constitution of the State, and are therefore void.
That part of the Constitution of the State to which these acts are said to he repugnant by the Circuit Attorney, is found in the 9th section of the 13th article of the Constitution, which says that in all criminal prosecutions, “ the accused has the right to be heard by himself or his counsel, to demand the nature and cause of accusation, to have compulsory process for witnesses in his favor, to meet the witnesses face to face, and in prosecutions on presentment or indictment to a speedy trial by an impartial jury of the vicinage. That the accused cannot be compelled to give evidence against himself', nor he deprived of life, liberty or property, but by the judgment of his Peers or the law of the land; ” and also the 14th section of the same article, which says “ that no person can for an indictable offence be proceeded against criminally, by information, except in cases arising in the land or naval forces,” &c.
It is argued by Mr. Hunt, Circuit Attorney for the State,
First. That an assault and battery is a criminal case or offence, and must be proceeded against by indictment alone. That the words, by the law of the land, means due process of law, which is by indictment or presentment of a grand jury, and to prove chis he cites 4 Coke’s Institutes, p. 50, where it is said that in the great charter of English liberty of Hen. Ill,“the words, by the law of the land, are interpreted to mean due process of law, and that is also interpreted to mean by indictment or presentment of a grand jury.”
The Circuit Attorney also insists that this summary mode of proceeding is a proceeding- by information, which is contrary to the Constitution of the State as above cited; and that the late statute is in no wise better than the act of 1825, which this ■Court has declared to be unconstitutional.
The argument on the side of Ledford principally rests on the ground, that the Legislature have the right to define how offences shall be punished and what shall constitute an offence, and that this offence not being now indictable, the Legislature may prescribe any other mode of proceeding against the offender, than by indictment.
In the case of Stein v. The State, I did not deliver the opinion of the Court, but I did concur in the result of that opinion, but for reasons not expressed in the opinion. My view of that question is, that inasmuch as the offence of assaults and batteries •were then indictable, and not made otherwise by the act of 1825, the proceeding before a Justice of the Peace in a summary way, was clearly a proceeding by way of information, or by a process in the nature of an information, while the offence still setaiaed the character of an indictable offence; an information is defined to be a *77 declaration or statement without being made on the oath of the grand jury, whereby a person is charged with the breach of some public law or penal statute.
It was a mere suggestion on the record, that an offence had been committed, and was in the nature of a declaration as to the particulars of the offence. See Jacobs’ laiv dictionary, title information, and 4 Blackstone’s Com. 308-9-10. In page 309 Blackstone says, it lay for riots, batteries, libels, and Jacobs under the title above cited, says the same. An information then, as understood by the makers of ■our constitution, is a proceeding by way of complaint, without the intervention of a grand jury to punish a person for some violation of public law, such as breaches of the peace, riots, fee., or for felonies, no matter how disgraceful the offence may be.
By the English law, the offender had a right to a trial by a petit jury. Our statutes allow the same privilege. The 14th section of our bill of rights says, "no person can for an indictable offence, be proceeded against criminally by information, except, &c.” What does the constitution mean by the use of this prohibition ? The convention surely intended to secure some right to the citizen, which otherwise might have been withholden from him.
By the common law, a person for many offences might have been proceeded against either by an information or by an indictment, 4 Bl. Com. 310. I understand the constitution to say this, and no more, that as long as the Legislature choose to say any offence is of sufficient magnitude to require the intervention of a grand jury to accuse the offender, or to secure him from unfounded prosecution for the offence, just that long shall such person be secured against all prosecutions by information for a like offence against public law.
In 1825, assaults and batteries were indictable, and while indictable, they could not be proceeded against by the summary mode authorized by the act of 1825.
The counsel for the State says, by way of argument, if the Legislature can make assaults, &c., not indictable, they can also declare that larceny, murder, and every other crime, shall no longer be indictable, whereby they may entirely dispense with a grand jury, and punish all offences by information, whereby the security of life, liberty, and property would be greatly endangered.
My first answer to this inquiry is, that by the 5th article of the amended constitution of the U. S., it is declared that££ no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in certain cases therein mentioned* This declaration of the constitution of the V. S., I understand to be the supreme law of the land. It therefore follows, that whenever the offence is made capital by law, and where the crime is infamous, the Legislature cannot authorize any other mode of proceeding, than by indictment or presentment. This throws a shield around the citizen to a great extent. What would be the true meaning of the words, infamous crimes, I will not now en-quire, because I conceive breaches of the peace are not of that character. I will, however, name one authority on this point. (Jscobs’ law die., title infamy, where it is said infamy extends to forgery, perjury, gross cheats, &c., disables a man to be a witness or a juror, and judgment of the pillory makes infamy.) I will now examine the case as now presented: breaches of the peace are no longer indictable.
The constitution says, that in criminal prosecutions the accused cannot he deprived -of life, liberty, or property, but by the law of the land; and to ascertain what these expressions comprehend, we are referred to Coke’s institutes as above cited; by Coke it that the same words that are used in our were used in the *78 great charter of English liberty, granted first by ICing John, and again and more fully granted by his son King Henry III, to the English people. The words of the charter on this point are, that “no man can be deprived of life, liberty or property, hut by the judgment of his peers or the law of the land.” Lord Coke commenting on this charter, in a great many particulars, coinés to the words above referred to, and says, nisi per Ugem terrae but by the law of the land; ” he then says, “ for the true sense and exposition of these words, see the statute of 37, Edward III, cap. 8, where the words by the law of the land, are rendered without due process of law, for there it is said, though it be contained in the great charter, that no man be taken, imprisoned, or put out of his freehold without process of law, that is by indictment or presentment of good and lawful men, where such deeds be done, in due manner or by writ original of the common law, without being brought in to answer but by due process of the common law hence it is contended that by the words, “by the law of the land,” we are to understand due process of law : and that these last wordsbeing farther interpreted, mean, by presentment or indictment of a .grand jury. I do not agree to this interpretation of the words used in the charter of Henry III, nor do I understand that Coke gives the words, nisi per legem terrae, this meaning. It is only by subsequent enactments of the British parliament, that these words are made to be so comprehensive that due process of law, and the law of the land, mean an indictment or presentment by a grand jury. Let us examine Lord Coke’s own exposition of the words, “ but by the law of the land,” in page 45 of 4th int. he says “ that no man be taken or imprisoned, but per legem terrae, that is by the common law, statute law, or custom of England, for these words, per legem terrae, being toward the end of the chapter, do refer to all precedent matters in the chapter, and hath the first place, because the liberty of a man’s person is more precious to him than all the rest, that follow; therefore it is great reason he should he relieved by law if he he wronged therein as hereafter shall he shown. In this the words, by the law of the land, are expressly understood by Coke to mean the common law, and statute law of England.
The author of the institutes divides the 29th chapter of the charier into mile several heads, and comments on each head ; in beginning his comment be says, «the genuine sense hereof being distinctly understood, we shall proceed in order to unfold how the same have been declared and interpreted. First. By authority of parliament. Second. By our books. Third, By precedent.
First. No man shall be taken, (that is,) restrained of his liberty by petition or suggestion to the ICing or his counsel, unless it he by indictment or presentment of good and lawful men ; this branch and divers other parts of this act have been notably explained by divers acts of parliament quoted in the margin.
The author then refers to seven acts of parliament made in the reign of different Kings, to show how much the original meaning of the words were enlarged, so as at last to he made to mean, that no man should he taken or imprisoned without indictment or presentment, in contradistinction of this thing being done by petition or suggestion to the King. See page 46, ibid.
When the author comes to the 8th branch of his division, he takes up the words, (no man shall he deprived of life, liberty, or property, hut by the law of the land); he then shows how these words were enlarged, by the statute of 37, E. Ill; which I will attend to. more particularly hereafter. In page 51, the identical words, per legem terrae, are treated of, and he says, (hereupon all commissions are grounded, wherein *79 it is said, that justice be done according to the laws and customs of England, and it is not said in the commissions, that justice he done according to the laws and customs of the King of England, lest it might bethought to hind the King only, nor is it said according to the laws of the people of England, lest it might he thought to hind them only; but that the law might extend to all, it is said by the law of the land, that is England). The author then says, “ and aptly it is said in the charter, by the law of the land, that is, by the law of England; for in those places where the law of England runneth not, other laws are allowed. Eor example, if a robbery be committed on the high seas, the law of England extendeth not, but the admiralty law will extend.” Many other examples are given, where the common law and statute law of England will not extend.
This will suffice to show what is to he understood by the words, law of the land. In Missouri I understand the law of the land to be,
Eirst. The constitution of the U. S., the acts of Congress, and treaties made in pursuance thereof, to be the supreme law of the laud; every other law must yield to them.
Second. The constitution of the State.
Third. The acts or statutes of the General Assembly, not inconsistent with the foregoing.
Eourth. The common law of England as adopted by the act of the General Assembly of 1816.
I think I have shown that the words, nisi per legem terrae, used in the magna charla, of II. Ill, meant nothing more than the statute law, and common law of England.
I will now proceed to show how it happened that, the people and parliament of England found it necessary to secure themselves more effectually by legislative enactments. In the first year of the reign of Henry III, this charter was granted by the Earl of Pembroke regent of England, and during the minority of the King to reconcile the people to the government of the young Prince. See 1 vol. Hume’s hist. Eng. 390. This King, whose reign was a long one, violated this charter repeatedly ; ibid. 401, 402, and throughout his whole history we see repeated instances of the violation of the charter, and he said why should I observe the charter, which is neglected by my grandees and nobility. Ibid. 401. The King was partial to foreigners, they filled all the great offices of the State, ibid., and that when the practices of these strangers were complained of, and the charter objected to them, they scrupled not to reply, what did the English laws signify to them; they minded them not. In this same reign matters of right and property, were by the King’s servants and officers, at least some of them decided by foreign law, ibid. 489, and the whole reign was exceedingly arbitrary and oppressive. During the subsequent reigns the great charter in many particulars, was often by the King violated, and often renewed; and in the reign of Edward III, the great charter received above twenty confirmations by the King. Ibid. 607. The historian is of opinion that the reasons for the confirmations must have been, because the charter had been violated. Thus we see a constant struggle between the people and the crown for a long period of time, for liberty on the one hand, and power and prerogative on the other. From the time of 'William the conqueror in .the year 1066, till the end of the reign of E. Ill, in 1377, a period of almost 300 years, this struggle was continued, when at last, in the reign of this last Prince, English law and government became better understood and more settled, than in any former age. Lord Coke in page 60, 4th Inst, says the words, by the law *80 of the land, are rendered by the statute 37th, E. Ill, to mean that no man be taken osimprisoned, or put out of his freehold, without due process of law, that is, by indictment or presentment of a grand jury- I understand the author to mean that that statute declares that such shall be the future meaning of the words, (law of the land). Our constitution does not declare what shall be the meaning of the words, the law of the land. I feel bound to. understand the words according to the common import thereof. It is true that the law of Missouri requires all judicial process to be in due form. Due process means legal process, process warranted and provided for by law j but that due process óf law includes, a proceeding by an indictment or presentment, and excludes every other mode of proceeding, I am. constrained to deny, I cannot find any note of the statute of 37th Edward III, in any history. All I can know about it is what Coke says about it in the page last cited. I find in Hume’s hist, of Eng. 607, the following mention made of a statute passed in that reign, to-wit: it is. declared in one of Edward’s statutes, that no man of what state or condition soever, shall be put out of land or tenement, nor be taken, nor imprisoned, nor be disinherited, nor be put to death, without being brought in to answer by due process of the law. In what year of the reign this statute was made it does not appear ; this may be the statute to which Lord Coke refers, but I think it is not.
Iam aware that in the 5th article of the amendment to the constitution of the U» S., this language is used, (to-wit:) that no person shall be deprived of life, liberty, or property, without due process of law. This due process of law I understand is to be such as the law may have provided. It surely cannot mean in this instance an indictment or presentment, because the same article, in the first point thereof, points out the cases in which an indictment or presentment must be used, which cases are where the crime is, capital or otherwise infamous. I understand that in this ease and in all others, except those excepted therein, where the judgment would he against life, liberty, or property, the process must in all respects he legal process, such as is provided for by the law. It shall not he the command of the General Assembly by warrant of execution, nor the mandate of the executive,nor of any other person than. those'appointed by the law and the constitution, to adjudicate in such cases. If a warrant of death did. not set out the offence for which the offender was condemned, I apprehend his execution would he unconstitutional, because the law requires that the offence should be set out, and without it the warrant would not he due process of law.
I cannot suppose that any man who ever spoke the English language, and who only understood the force of words moderately well, and who had ideas moderately clear, would when he intended to say or write that no man should he deprived of life, liberty, or property, unless on a presentment or indictment of a grand jury, would say in lieu thereof, but by the law of the land, or by due process of law. An indictment or presentment may or may not be due process of law, as. the law happens ten be at the time. The Legislature have imposed fines on persons for retailing liquor without license; now the consequence of a conviction in this case would be to deprive the man of property, at least so much as would pay the fine and costs, and a further consequence might be to imprison him. for want of payment. Must there be to satisfy the constitution an indictment or presentment before the offender can be made to answer ? The practice of all the N. American, States is to the contrary of this. If the fundamental laws of the land require that no man in particular cases, shall lose his life, or liberty, without an indictment of a grand jury, he it so, and if *81 they forbid, that any man shall in any case lose life, liberty, or property, without the proceedings against him are all according to law, this is wise also, and ought to be the rule in every country. The counsel have referred us to a case in 4 Coke’s Inst., p. 50, which he alledges is just like the present case, wherein Coke declares that the government of England violated the charter. Coke says, “ against this ancient and fundamental law, and in the face thereof, I find an act of Parliament made 11th Hen. VII, by which as well Justices of Assise, as Justices of the Peace, without any finding or presentment by verdict of twelve men, upon a bare information for the King before them made, should have full power and authority by their discretions to hear and determine all offendes and contempts committed or done by any person or persons against the form and effect of any statute made and not repealed; by color of which act, shaking the fundamental law. It is not credible what horrible oppressions and exactions, to the undoing of infinite numbers of people, were committed by Empson and Dudley, being Justices of the Peace throughout England, and upon this unjust act (as commonly falleth out in like eases) a new office was erected, and they made masters of the King’s forfeitures. Hume says, in his second volume of the History of England, p. 245^6, that after Henry VII had ended his wars, he gave full scope to. his natural propensity and avarice, which' had ever been his ruling passion, being increased by age and encouraged by absolute authority, broke all restraints of shame or justice, he had found two ministers, Emp-son and Dudley, perfectly qualified to second his rapacious and tyranical inclinations, and to prey upon his defenceless people. These instruments of oppression were both lawyers, the first of mean birth, of brutal manners, of an unrelenting temper. The second better born, better educated, and better bred; but equally unjust, severe and inflexible. By their knowledge in the law, these men were qualified to pervert the forms of justice, to the oppression of the innocent; and the formidable authority of the King supported them in all their iniquities. It was their usual practice at first to observe so far the appearance of law as to give indictments to those whom they intended to oppress, upon which the persons were committed to prison, but never brought to trial, and were at length obliged, in order to recover their liberty, to pay heavy fines and ransoms, which were called mitigations and compositions. By degrees the very appearance of law was neglected; the two ministers sent forth their precepts to attach men, and summoned them before themselves and some others at their private houses in a Court of Commission, where in a summary manner, without trial or jury, arbitrary decrees were issued both in pleas of the Crown and controversies between private parties. Juries themselves when summoned, proved but small security, being browbeaten by these oppressors, nay fined, imprisoned and punished if they gave sentence contrary to the inclination of the ministers. “ Old penal statutes, supposed to be obsolete, were revived against all men, spies were employed by them, encouraged and rewarded throughout the kingdom, whereby the King’s treasury became very rich.” These were some of the consequences which grew out of the act H. VII. By the foregoing history of the statute of 11 H. VII, and the oppressions under it, it is quite clear that magna charta was greatly infringed; the Justices had discretionary power of themselves, without a petit or grand jury to give what judgments they pleased, might fine to any amount and imprison to any extent. By our statute the Justice has no discretion, he must follow the law as far as he is concerned, and the party may have a jury of twelve men to try his case, before the Justice can give a sentence at all. I therefore conclude that the statute of H. VII *82 was contrary to magna charta, more on account .of the authority given thereby to act arbitrarily and at discretion, than on account of an indictment or presentment being dispensed with, in cases of mere misdemeanor. I hence conclude that our statute is materially different from that of 11 H. YII.
The judgment of the Circuit Court is affirmed, with costs.