# CHARLESTON.

## STATE *v.* COTTRILL.

Submitted January 19, 1888.—Decided February 28, 1888.

1. INDICTMENT—SELLING SPIRITUOUS LIQUORS—PLACE OF SALE.

   In an indictment for selling spirituous liquors without a license, it is not necessary to allege in the indictment the place where the liquor was sold. (pp. 163, 164.)

2. TRIAL—WAIVER OF JURY.

   On the question, whether section 14 of the bill of rights of this State, declaring that "trial of crimes and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men," not only secures to persons accused of crimes and misdemeanors the right to have an issue of not guilty to the charge in the indictment tried by a jury, but also inhibits the trial of such issues by the court in lieu of a jury, and on the question whether an issue in a misdemeanor case can be so tried even with consent of the defendant, the Court is equally divided. SNYDER and GREEN, JJ., for affirmance. JOHNSON, P. and WOODS, J., *contra.* (p. 165 *et seq.*)

3. TRIAL—WAIVER OF JURY.

   As to whether section 29 of chapter 116 of the Code, so far as it provides for the trial of misdemeanor cases by the court in lieu of a jury with consent of the defendant, is unconstitutional, the Court is equally divided. SNYDER and GREEN, JJ., for affirmance. JOHNSON, P., and WOODS, J., *contra.* (p. 165 *et seq.*)

*R. S. Blair* for plaintiff in error.

*Attorney-General Alfred Caldwell* for the State.

JOHNSON, PRESIDENT :

At the July term, 1886, of the Circuit Court of Doddridge county, the defendant was indicted for unlawfully retailing spirituous liquors. The indictment charged that "Emmerson Cottrill, on the —— day of January, 1886, * * * in the said county, unlawfully, and without a State license therefor, did sell, offer and expose for sale, in said county, spirituous liquors, wine, porter, ale, and beer, and drinks of like nature, and a mixture thereof," etc. The defendant moved the court to quash the indictment, which motion was overruled, and the defendant pleaded not guilty. The order

shows that issue was joined on said plea, "and, a jury being waived, the matters of law and fact were submitted to the court, and thereupon the court rendered judgment against the defendant for ten dollars, fine, and the costs. It is therefore considered by the court that the State of West Virginia recover against the said defendant ten dollars, fine, and the costs herein expended." Whereupon the defendant moved the court to set aside the judgment, and grant him a new trial, which motion was overruled, and to the judgment the defendant obtained a writ of error.

There are two questions argued here upon the grounds of error assigned : *First,* Is the indictment fatally defective because it does not state the place where the liquor was sold ? *Second,* Could the court, even with the consent of the defendant, under our bill of rights, in lieu of a jury, try the issue joined ?

The counsel for plaintiff in error, as to the first question, relies on section 21 of chapter 32 of the Code, and *Com.* v. *Head,* 11 Gratt. 819. It is true, as stated in the argument of counsel for plaintiff in error, that section 21 of chapter 107 of the Acts of 1877, provides that "every certificate to sell spirituous liquors, wine, porter, ale, or beer, or any drink of like nature, or to furnish drinks or refreshments at a public theatre, shall specify the house where they are to be sold, and a sale at any other place shall be held to be a sale without license." The manifest intent of this was to limit the party to a single place, and not to permit him, under one license, to sell liquors at every place in the county, and thus deprive the State of its revenue, and to establish places for the sale of liquors in certain parts of the county without the consent of the people of such places.

Samuels, Judge, in his opinion in *Com.* v. *Head, supra,* said : "The grand jury intended to present an offence against the latter clause of the statute (chapter 38, § 18, p. 209, Code.) This offence is local in its nature. Place is of its essence, and yet no place is alleged but the whole county." The latter clause of said section 18 is as follows : "And if any person sell, by retail, wine, ardent spirits, or a mixture thereof, to be drank in or at the store, or other place of sale, he shall, unless he be licensed to keep an ordinary at such

store or place, forfeit thirty dollars." The first clause of the section is that "if any person shall, without paying such tax and obtaining such certificate as is prescribed by the fourteenth section, sell, by retail, wine, ardent spirits, or a mixture thereof, he shall forfeit thirty dollars." The Judge says that "the grand jury intended to present an offence against the latter clause of the section," which offence is local in its nature. Not so with the offence under the first clause of the section. He says, further: "A sale of ardent spirits by an unlicensed dealer, not to be drunk at the place of sale, would fall within the first clause of the section above cited. The identity of the place at which the spirits were to be drunk with the place at which they were to be sold, enters into and forms part of the offence under the latter clause of the statute. If this be so, the defendant should be apprised of the place alleged, so that he may be prepared with proof, if any he have, to show that the place of sale and that of drink are not the same."

The statute now is very different. There is now no distinction as to selling, whether to be drunk at the place where sold or elsewhere. If he has no license, he is liable if he sells anywhere in the county. If he has a license to sell at a particular place, he may defend himself by showing his license if the proof is the selling was there. The State proves the selling, and that it was within 12 months, and in the county. Of course, the proof shows where the liquor was sold in the county. The State rests. The defendant then offers his license. If the selling was at the place designated therein, it is a perfect defence. If the selling is admitted, the license shows the defendant's guilt if the selling was at a different place in the county, and within 12 months. It might as well be contended that an indictment for assault and battery should allege the place in the county where the offence was committed. The motion to quash was properly overruled.

The other point relied on presents much more difficulty. Did the defendant's waiver of a jury confer on the court the right to try the issue joined? The statute provides that "in any case, except a case of felony, in which a trial by jury would be otherwise proper, the parties or their counsel by

consent entered of record, may waive the right to have a jury, and thereupon the whole matter of law and fact shall be heard and determined, and judgment given by the court; or, by like consent, the jury may consist of seven, and in that case a verdict shall be as valid, and have the same effect, as if it had been found by a jury of twelve." Code 1887, ch. 116, § 29, p. 760 (same as section 29, ch. 83, Acts 1882.)

It is insisted by counsel for plaintiff in error that this statute is unconstitutional. Section 14 of the bill of rights declares: "Trials of crimes and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offence was committed, unless, upon petition of the accused, and for good cause shown, it is removed to some other county. In all such trials the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witnesses against him, and shall have the assistance of counsel, and a reasonable time to prepare his defence ; and there shall be awarded to him compulsory process for obtaining witnesses in his favor."

The Attorney-General, with his usual fairness, has cited the authorities on both sides of the question. He calls the attention of the court to the fact that substantially the same statute we are now considering was a part of the Code of 1849 (section 9, ch. 162); that it is in the same language found in the Code of 1860 (section 38, ch. 162); and also in the Code of 1868 of this State (section 29, ch. 116); that the same language substantially as is found in the clause of our bill of rights now under consideration is found in section 8 of the bill of rights in the Constitution of 1863; and says: "When all this is considered, together with the fact that for nearly forty years this law has been upon our statute-books, and during that long period it has governed the practice in misdemeanor cases ; that its existence was known to all lawyers; that, in the trial of revenue causes at least, it was in constant use in every circuit in the State ; and that no question has been raised heretofore as to its constitutionality in the court of last resort,—this Court will undoubtedly only change the established practice, which has passed under the eyes of its judges, in so many records, entirely unquestioned,

by declaring this statute unconstitutional, when absolutely compelled to do so." He also refers to the fact that, in one volume of our reports, there are four revenue cases, in which it appears the trial by jury was waived : State v. *Miller*, 26 W. Va. 106 ; State v. *Bruce*, Id. 153 ; State v. *Enoch*, Id. 253 ; State v. *Oliver*, Id. 422

This is true, and other cases might be cited ; but in none of the cases, as the Attorney-General admits, was the constitutional question raised, and of course it was not considered by the court, as its attention was not called to it, and it was overlooked by the court. It shows, however, a long acquiescence in the statute as constitutional.

In *Wilson* v. *State*, 16 Ark. 601, it was held that, the statute of the State having made no provision for trials by consent in criminal cases other than a trial by jury, nothing short of the confession of the facts, or the finding of them by a verdict of a jury, can regularly authorize the judgment of the court against the accused on an indictment for a felony, where the plea of not guilty is filed by himself, or entered for him, even though the accused may waive a trial by jury, and consent that the judge may try the issue. In delivering the opinion of the court, Scott, J., said : " The other assignment presents a new question in this court, which is not without difficulty ; mainly, however, because a practice has grown up in this State—to what extent we are not accurately informed—to submit, by consent, issues of not guilty, in cases of misdemeanors at least, to the trial and judgment of the Circuit Court sitting as a jury, as is expressly authorized by our statute in cases on the civil side of the court. In the cases of *Guess* v. *State*, 6 Ark. 147 ; *Rector* v. *State*, Id. 187 ; *Robinson* v. *State*, 7 Ark. 122 ; *McBride* v. *State*, Id. 374,—this practice seems to have been tacitly allowed by this Court, and may possibly have been in other cases not developed in our printed reports. * * * But, whatever may be the difficulties on this score, the party in this case demands his legal rights ; and although it may not be improbale that he is a drunken thief, and would be better off in the penitentiary than out of it, nevertheless his legal rights are as emphatically secured to him by our Constitution and law as those of the best of our citizens."

So here, if a constitutional right has been invaded, no length of time in which similiar rights have been invaded without question can take away from the plaintiff in error his right to show, if he can, that he has not been legally convicted.

Judge Cooley, in his Constitutional Limitations, 70, says : " Acquiescence, for however great a length of time, cannot legalize a clear usurpation of power, where the people have clearly expressed their will in the Constitution, and have appointed judicial tribunals to enforce it. A power is frequently yielded to merely because it is claimed ; and it may be exercised for a long period, in violation of the constitutional prohibition, before the mischief which the Constitution was designed to guard against may appear, or before any one may be sufficiently interested in the subject to raise the question; but these circumstances cannot be allowed to sanction a clear infraction of the Constitution. We think we allow to contemporary and practical construction its full legimate force when we suffer it, where it is clear and uniform, to solve in its own favor doubts which arise on reading the instrument to be construed." This quotation was approved in *Railway Co.* v. *Miller*, 19 W. Va. 421.

It must be remembered that the language of the bill of rights of Virginia, when the Code of 1849, where for the first time the statutes we are considering appeared, was quite different from that quoted from our Constitution. It is found in the bill of rights of Virginia, unanimously adopted June 12, 1776, and also became a part of the Constitution of 1850. It is as follows, (section 8 :) " That in all capital or criminal prosecutions a man hath a right to demand the cause and nature of his accusation, to be confronted with the accusers and witnesses, to call for evidence in his favor, and to a speedy trial by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty ; nor can he be compelled to give evidence against himself; that no man be deprived of his liberty except by the law of the land, or the judgment of his peers."

It has been decided that an issue on an indictment for felony may, with the consent of the accused, be tried by the court in lieu of a jury. *State* v. *Polson*, 29 Iowa 133 ; *State*

v. *Kaufman*, 51 Iowa 578, 2 N. W. Rep. 275; *State* v. *White*, 33 La. Ann. 1,218; *State* v. *Askins*, Id. 1,253.

The case of *State* v. *Kaufman*, was an indictment for uttering and publishing a forged promissory note. One of the jurors being ill, the defendant consented to his discharge, and that the case might be tried by 11 jurors. The Constitution of Iowa provides that " the right of trial by jury shall remain inviolate," etc. The court held the defendant could waive his right.

The first Louisiana case was for stabbing with intent to kill. The Louisiana Constitution declares : " In all criminal prosecutions the accused shall enjoy the right to a speedy public trial by an impartial jury." The jury being waived, and the court having found the defendant guilty, he insisted that he was not bound by the waiver. In the opinion delivered by Poche, J., he said : " The language, by an impartial jury,' does not, in our opinion, prescribe an exclusive mode of trial of all criminal charges. It intends to secure the right of such trial to every accused, and to place such right, when he claims it, beyond the reach of the power of the Legislature, or any other department of the government. But the language does not justify the interpretation so as to mean that, in all criminal prosecutions, the accused shall or must be tried by jury. It extends or secures to him a valued right, but the language used does not preclude or deny to the accused the power or option to waive the right thus secured."

In many cases it has been held that, in a felony case, the waiver of a jury will not bind the defendant. *Cancemi* v. *People*, 18 N. Y. 128 ; *Pierson* v. *People*, 79 N. Y. 424 ; *Allen* v. *State*, Ind. 461 ; *State* v. *Carman*, 63 Iowa 130, 18 N. W. Rep. 691 ; *State* v. *Mansfield*, 41 Mo. 470 ; *Hill* v. *People*, 16 Mich. 351 ; *Wilson* v. *State*, 16 Ark. 601 ; *Williams* v. *State*, 12 Ohio St. 622.

The New York Constitution declares that " the trial by jury, in all cases in which it has heretofore been used, shall remain inviolate forever." In *Cancemi's Case, supra*, it appears he was indicted for murder. After some progress had been made in the trial a juror was withdrawn, in pursuance of a stipulation signed in open court by the prisoner, his counsel, and the counsel for the people, which provided

that the 11 remaining jurors should try the issue, and the record should show that it was tried by 12 jurors. Strong, J., said: "But it is insisted that the plaintiff in error might waive his right to a trial by a jury of twelve persons, and that, having done so, the trial and conviction in this case were valid. The researches of counsel have not enabled them to refer the court to any case directly in point, either in favor of or against this proposition, nor are the court aware of any such case; and hence it must be examined and decided in the light of principle, and such analogies as reported decisions afford. * * * Criminal prosecutions involve public wrongs,—'a breach and violation of public rights and duties,'—which affect 'the whole community, considered as a community, in its social and aggregate capacity.' 3 Bl. Comm. 2. * * * The State, the public, have an interest in the preservation of the liberties and the lives of the citizens, and will not allow them to be taken away 'without due process of law,' when forfeited, as they may be, as a punishment for crime. * * * 'Natural life, being the immediate donation of the great Creator, cannot legally be disposed of or destroyed by any individual, neither by the person himself nor by any other of his fellow-creatures, merely upon their own authority.' These considerations make it apparent that the right of a defendant in a criminal prosecution to affect by consent the conduct of a case should be much more limited than in civil actions. * * * A plea of guilty to any indictment, whatever may be the grade of the crime, will be received and acted upon, if it is made clearly to appear that the nature and effect of it are understood by the accused. In such a case the preliminary investigation of a grand jury, with the admission of the accusation in the indictment is supposed to be a sufficient safeguard to the public interests. But, when issue is joined upon an indictment, the trial must be by the tribunal and in the mode which the Constitution and laws provide, without any esssential change. The public officer, prosecuting for the people, has no authority to consent to such a change; nor has the defendant."

In *State* v. *Carman*, 63 Iowa 130, 18 N. W. Rep. 691, the indictment was for assault with intent to kill. The constitutional question was not discussed, but the statute was

construed.    The statute provided that " issues of fact in
any action in an ordinary proceeding must be tried by a jury
unless the same is waived." In the Code of criminal pro-
cedure there was no provisions for the waiver of a jury ; but
another statute provided that " an issue of fact must be tried
by jury of the county in which the indictment is found, un-
less a change of venue has been awarded." Adams, J., said :
" We regard this provision as excluding the jurisdiction of
the court, without a jury, to try such issue. The question
presented is not as to the waiver of a mere statutory privi-
lege, but an imperative provision, based, as we view it, upon
the soundest conception of public policy.    Life and liberty
are too sacred to be placed at the disposal of any one man,
and always will be so long as man is fallible.    The innocent
person, unduly influenced by his consciousness of innocence,
and placing undue confidence in his evidence, would, when
charged with crime, be the one most easily induced to waive
his safeguards.    There is no resemblance between such a
case and a person pleading guilty.    In the latter case there
is no trial, but mere judgment upon the plea."

If the statute here had allowed the waiver, and the Consti-
tution had contained the language we have quoted from the
statute, upon the principles announced, would not that Court
declare such statute unconstitutional ? Seevers, J., dissented,
and construed the statute to grant a privilege that could be
waived, and not an imperative requirement that the case
should be tried by a jury.    He relied on *State* v. *Kaufman*,
51 Iowa 578, 2 N. W. Rep. 275, before cited.

In Missouri the bill of rights declares that " the right of
trial by jury shall remain inviolate." In *State* v. *Mansfield*,
*supra*, the court held, that being an indictment for felony,
that the prisoner could not waive his constitutional right to
be tried by a jury. The statute in that State allows a waiver
of the right in certain misdemeanor cases ; but before that
statute was passed it was held, in a misdemeanor case, that
the defendant would not be bound by such waiver. *Neales*
v. *State*, 10 Mo. 498. It has also been held in Missouri that
the clause of the Constitution that " no person shall be held
to answer for a capital or otherwise infamous crime, unless
on a presentment or indictment of a grand jury," referred to

felonies and the higher grade of crimes. *State* v. *Ledford*, 3 Mo. 102; *State* v. *Cowen*, 29 Mo. 330; *State* v. *Ebert*, 40 Mo. 186.

The case of *Hill* v. *People*, 16 Mich., *supra*, was an indictment for murder. One of the jurors was an alien. On motion for a new trial it was held that it was incompetent for a defendant to waive his constitutional right to a trial by jury of 12 men, and the case must be treated as though he had been tried by 11 jurors. The Circuit Court having denied the motion, on writ of error the judgment was reversed. The Constitution of Michigan contained the provision : " In every criminal prosecution the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than twelve men in all courts not of record."

In the case cited from 12 Ohio St. 622, the indictment was for forgery, and no opinion was delivered. The attorney-general appeared in the court, and submitted to the reversal of the judgment and sentence, upon the ground "that, upon the trial of an issue upon the plea of not guilty in the higher grades of crime, it is not in the power of the accused to waive a trial by jury, and by consent submit to have the facts found by the court, so as to authorize a legal judgment and sentence upon such finding." The court was of the same opinion, and reversed the judgment.

One question in *Lord Dacre's Case*, J. Kel. 59, was whether the prisoner might waive a trial by his peers and be tried by the country; and the judges agreed that he could not, for the statute of *magna charta* was in the negative, and the prosecution was at the king's suit. The same thing was again resolved, on the arraignment of Lord Audley, in the seventh year of the reign of Charles I., and the reason was not so properly a privilege of the nobility as part of the indispensable law of the land. 1 Wood. Lect. 346.

It has frequently been held that in misdemeanor cases the defendant will be bound by his waiver of a trial by jury. *Com.* v. *Dailey*, 12 Cush. 80; *Com.* v. *Whitney*, 108 Mass. 5; *Darst* v. *People*, 51 Ill. 286; *Ward* v. *People*, 30 Mich. 116; *Dailey* v. *State*, 4 Ohio St. 57; *Dillingham* v. *State*, 5 Ohio St. 280; *Murphy* v. *Com.*, 1 Metc. (Ky.) 365; *Tyra* v. *Com.*, 2 Metc. (Ky.) 1; *State* v. *Larger*, 45 Mo. 510; *State* v. *Van*

*Matre*, 49 Mo. 268; *State* v. *Cox*, 8 Ark. 436; *Cross* v. *State*, 78 Ala. 430. *Com.* v. *Dailey*, 12 Cush. 80, was an indictment for assault, and the defendant consented to the discharge of a juror, and that the case might be tried by the remaining 11, and the court held he was bound by it. Shaw, C. J., delivered the opinion of the court. He said, (page 81 :) " The precise question presented to us in this case is whether a party on trial charged with a misdemeanor, when a juror was necessarily withdrawn during the trial, and, by the consent and request of the counsel on the part both of the Commonwealth and the accused, it was proposed and consented to that the trial should proceed with eleven jurors, a judgment can be entered on the verdict. * * * It is not a question here whether, under the Constitution of the United States, and of this and many other States, declaring the right of jury trial inviolate, there can be a jury legally constituted, within these constitutional provisions, otherwise than 'of twelve men ; nor whether the court can authoritatively order any other mode of trial in cases civil or criminal; nor whether, in criminal cases, any distinction can be made between felony and misdemeanor ; nor, indeed, whether it is competent for the Legislature to provide by law for a jury of a smaller number than twelve, or authorize any other rule for governing their action than unanimity. * * * But, supposing the law has duly provided that a jury of twelve men shall be impaneled to try an indictment, the evidence is all in, and a juror dies, or becomes insane,—for we may state exigency so strong that it is impossible to proceed with the whole panel, —wnether it is legal for the accused to consent to proceed without the juror withdrawn ; or, to state the same question in a little different form, whether he may stipulate, beforehand, on the record, that he will take no exception to such irregularity ; and, if he does, whether the court cannot legally act upon it and carry such stipulation into effect. We think it can."

He argues, in the broadest form, applicable alike to felonies and misdemeanors, that the consent to be tried by the 11 is binding on him ; that his right to 12 jurors can be waived, just as he may waive a trial altogether, and plead guilty, or consent to admit legal instruments offered on the other side

without legal proof of their execution. He says, further:
" But, if consent will authorize a trial before eleven jurors,
why not before ten or six or one ?  It appears to us that it is
a good answer to say that no departure from established
forms of trial can take place without permission of the judge,
and no discreet judge would permit any such extravagant or
wide departure from these salutary forms as the question
supposes, nor any departure, unless upon some unforeseen
or urgent exigency.  Under the circumstances of the case,
the court is of the opinion that on the trial of a conspiracy,
supposing it an irregularity to take the verdict of eleven
jurors without the consent of both parties, yet as it did not
affect the jurisdiction of the court, the exception was one
that the accused might waive; that having stipulated of rec-
ord that he would take no exception to such irregularity, he
is now precluded from taking it, and therefore that the
verdict must stand."

In *Com.* v. *Whitney*, 108 Mass. 5, the party was tried be-
fore the municipal court for nuisance, and was found guilty,
and appealed, and gave his recognizance in the penalty of
$500.00 to appear before the Supreme Court at May term,
1870, and prosecute his appeal in the Supreme Court.  At
this term he was defaulted; and being arrested after default,
and placed at the bar at the October term, 1870, for sentence,
he moved in arrest of judgment on the ground that the stat-
ute authorizing a sentence on default is unconstitutional, and
that he ought, before sentence, to be entitled to a trial by
jury.  Morton, J., said, after quoting the statute :

" The defendant contends that this section is unconstitu-
tional, because it violates the twelfth article of the bill of
rights, which provides that 'no subject shall be arrested, im-
prisoned, despoiled, or deprived of his property, immunities,
or privileges, put out of the protection of the law, exiled, or
deprived of his life, liberty, or estate, but by the judgment
of his peers, or the law of the land.'  This objection cannot
be sustained.  It has been the uniform practice of the Leg-
islature, since the adoption of the Constitution, to pass laws
regulating the mode in which the rights secured to the sub-
ject by the bill of rights and the Constitution shall be en-
joyed; and, if the subject neglects to comply with the reg-

ulations, he thereby waives his constitutional privileges. *Jones* v. *Robbins*, 8 Gray 329, 341 ; *Com.* v. *Walton*, 11 Allen 238, 240. The statute in question falls within this principle. It gives any person convicted before a justice of the peace or police court the right to appeal to the Supreme Court, and to have a trial by jury, and makes regulations which are reasonable and necessary as to the mode in which he may enter and prosecute his appeal. * * * If he neglects so to enter and prosecute his appeal, he waives his right of trial by jury ; and the provision of the fifth section, that he may thereupon be defaulted and sentenced, is not unconstitutional."

In the case *Darst* v. *State*, 51 Ill. 286, the indictment was for a misdemeanor, and the jury was waiv d, and the issue tried by the court. The constitutional provision is not quoted nor discussed, and all the court says on the subject is : " It is urged that a jury could not be waived ; but we see no reason why it may not be in trials for misdemeanors." I have not access to the old Constitution of Illinois in operation when this case was decided, but the fifth section of the bill of rights of the Constitution of 1870 provides " that the right of trial by jury as heretofore enjoyed shall remain inviolate."

The Michigan Constitution provides " that the right of trial by jury shall remain, but shall be deemed to be waived in all civil cases unless demanded by one of the parties in such manner as shall be prescribed by law." In *Ward* v. *People*, *supra*, the defendant was tried before a justice for assault and battery, pleaded not guilty, and, when asked by the justice if he desired a jury, said he did not. The question presented in the appellate court, on writ of error to the judgment, was whether, having waived a jury, he was bound, and, under the constitutional provision, he insisted he was not. Christiancy, J., in delivering the opinion of the court, said :

" It is very clear that this section, in its application to criminal cases, does not authorize any implied waiver of a jury from the silence of the defendant, or his mere failure to demand a jury. * * * But it is further insisted by the plaintiff in error that the provisions of section 27, art. 6, of

the Constitution, above cited, expressly providing that the right of trial by jury shall be deemed to be waived in civil cases unless demanded, etc., involves an implied prohibition against any waiver of trial by jury in a criminal case. But, while I think it may be regarded as an implied prohibition against having the mere failure of the defendant to demand a jury trial treated as a waiver of such trial, I do not think there is anything in the provision which prevents the defendant from expressly electing whether he will have a jury trial, or be tried by the court without a jury. The law secures to him the right of being tried in either way, as he may prefer; and, though a trial by jury might generally be considered as more advantageous to the defendant, yet he may sometimes prefer to be tried by the court without a jury; and, if he deems it a privilege to be thus tried, it certainly can not be any violation of his constitutional rights to allow him to make that election by an express declaration that he does not wish to be tried by a jury. There is nothing in *Hill* v. *People*, 16 Mich. 351, which conflicts with this conclusion."

In *Dailey* v. *State, supra*, the charge was selling intoxicating liquors contrary to law. The defendant waived a jury, and was tried by the court, which found him guilty, and he moved in arrest of judgment. The motion was overruled, and he sued out a writ of error to reverse the judgment. Kennon, J., in delivering the opinion of the court, said: " Is the statute authorizing the probate judge to try the issue on the plea of not guilty constitutional ? By the fifth section of the bill of rights in our present Constitution it is provided ' that the right of trial by jury shall be inviolate.' By the tenth section it is provided that, 'in any trial and in any court, the accused shall be allowed to have a speedy public trial by an impartial jury.' * * * Does this act in any sense interfere with the right of trial by jury ? If the act had provided, in express terms, that the accused might have his choice of two modes of trial, either by the court or jury, as he might think proper, and, if he supposed the court the safer mode of trial, should expressly waive his right of trial by jury, and request that the court should try the issue, it would be hard to see how his right of trial by jury was violated. The provision of the Constitution was intended to limit the power of the Leg-

islature in this particular, and prohibit it from depriving the accused of the right to have a jury of twelve impartial men to pass on his guilt or innocence.   That right still exists. All he has to do, is to demand a jury trial, and the law awards it to him."

The Constitution of Kentucky declares " that in all criminal prosecutions the accused hath a right  *  *  *  to a speedy public trial by an impartial jury of the vicinage." In the case of *Murphy* v.  *Com.*, *supra*, it is impossible to tell what the charge was, except that it was a misdemeanor. One of the points made by Atty. Gen. Harlan was :   " As the defendant consented to be tried by eleven jurors, he is bound by the agreement.   A person can waive his constitutional rights in such case."   Simpson, C. J., announced the opinion of the court, and does not refer to the constitutional provisions, but says :

" No reason has been suggested why the parties should not be allowed, in a case of this kind, to make such an agreement; nor are we able to perceive any valid objection to the exercise of such power. The only penalty under the statute is a fine of one  hundred  dollars.   Nothing more is involved in the issue of the case than is frequently involved in the decision of actions in civil cases.  *  *  *  In prosecutions for misdemeanors, where the penalty imposed is merely a fine, an agreement by the defendant to be tried by a jury constituted of a less number than twelve persons is not inconsistent with any rule of law, or with public policy.   Nor does it tend to defeat public justice ; but, on the contrary, may tend to promote it, by facilitating the dispatch of business in court, and preventing unnecessary and embarrassing delays."

The decision in the case of *State* v.  *Cox*, *supra*, involved the construction of the following constitutional provision : " The general assembly shall have power to confer such jurisdiction as it may from time to time deem proper on justices of the peace in all matters of contract, covenants, and actions for the recovery of fines and forfeitures, when the amount claimed does not exceed one hundred dollars, and in actions and proceedings for assault and battery, and other penal offences, less than felony, which may be pun-

ished by fine only." The court, by Oldham, J., said : " The constitutional provision securing the right of trial by a jury means a jury of twelve men, according to the known technical meaning of the term. Of his right to such jury the defendant can not be deprived except by his own consent. True, he may waive the right, and submit to a decision of six men, even to that of the justice of the peace himself ; but, in all cases where he may require it, it is the duty of the justice to impanel a legal jury of twelve men for the trial of the cause."

We have found but few decisions holding that in misdemeanor cases the defendant would not be concluded by his waiver of a jury. It is held in the following cases : *Neales* v. *State*, 10 Mo. 498 ; *Bond* v. *State*, 17 Ark. 290 ; *State* v. *Stewart*, 89 N. C. 563 ; *State* v. *Holt*, 90 N. C. 749. The case of *Neales* v. *State*, *supra*, was for liquor selling. He waived a jury, and the case was tried by the court. McBride, J., said : " Another objection, equally fatal to the judgment, was the trial of the case by the court on the plea of not guilty. It has heretofore been virtually decided by this court in two cases that, unless the defendant pleads guilty to the charge contained in the indictment, the court can not try the issue, and assess a fine against him. *Thomas* v. *State*, 6 Mo. 457 ; *Ross* v. *State*, 9 Mo. 696. It is exclusively the province of a jury to try the issue of not guilty, and the consent of the defendant for the court to try the same can not confer such power on the court."

Wagner, J., in *State* v. *Mansfield*, 41 Mo. 475, gives the ground on which the decision in *Neales* v. *State*, *supra*, was based. He said : " The statute now allows a defendant to be tried by the court without a jury, in cases of certain misdemeanors, if he waives his right to have a jury ; but, before the enactment of this statute, it was decided that the judge of a court could not try a defendant in a criminal case upon a plea of not guilty even by his consent ; that a jury could alone try such plea, ( *Neales* v. *State*, 10 Mo. 498 ;) and this opinion was held when the proceeding was a prosecution for a misdemeanor." For the same reason, that there was no statute authorizing such waiver, and trial by the court, were the decisions rendered in *Wilson* v. *State*, 16 Ark. 604, and *Bond* v. *State*, *supra*.

It was said in *State* v. *Holt*, 90 N. C. 749, and *State* v. *Stewart*, 89 N. C. 563, that there was no statute authorizing such trial. The provision as to trials in criminal cases in the North Carolina Constitution is as follows : " No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court." The indictment in *State* v. *Stewart*, 89 N. C. 563, was for assault and battery. The defendant waived a jury, and the court tried the issue, and found the defendant guilty. Ashe, J., in delivering the opinion of the court, said, after quoting the constitutional provisions : " The court here has undertaken to serve in the double capacity of judge and jury, and try the defendant without a jury, which it had no authority to do, even with the consent of the prisoner. 1 Bish. Crim. Law, § 759. The action of the court in this respect was in violation of the Constitution, and in subversion of a fundamental principle of the common-law. *State* v. *Moss*, 2 Jones (N. C.) 66."

In *State* v. *Holt*, 90 N. C. 749, the defendant was indicted for cruelty to animals. He pleaded *autre fois convict*, and, on an agreement of facts with the attorney for the State, submitted the case to the court. The court found against the defendant, and entered judgment against him ; and to this judgment he obtained a writ of error or " appeal," as it is called in the opinion of the court. For the court, Merrimon, J., said : " It is scarcely supposed that in this country any serious danger could arise to the citizen, or to the country generally, from an open or flagrant violation of the fundamental rights in question. Occasional instances have occurred, in times of public danger and trouble, wherein the citizen was deprived of his right to a trial by a jury, and his life was unlawfully sacrificed; but such cases have been few, and have met with very general condemnation. A greater danger arises from practice and precedents that insidiously gain a foothold and power in courts of justice, by inadvertence and lack of due consideration. The great importance of trial by jury is sometimes lost sight of, even in courts of justice, in the disposition of petty misdemeanor cases of no great moment, and what are called ' plain cases.' In the economy of time, the hurry of business, lack of attention,

hasty consideration, irregular and unwarranted methods of trial are adopted, allowed, tolerated, and thus vicious practices sprung up, creating sources of danger to constitutional rights. It is the province and duty of the courts to keep watch over and protect fundamental rights in all matters that come before them. Those who administer the law should never forget that decided cases make precedents,— precedents oftentimes of little moment in themselves, but which in their accumulated power may, in some emergency, overturn principle, and subvert the rights of many people. * * * The court erred in passing upon the facts submitted to it without the finding of a jury, and for such error the judgment must be reversed."

Keeping in view the rules of constitutional interpretation approved in *Railway Co.* v. *Miller*, 19 W. Va. 408, is there any conflict between the statute and the bill of rights? The statute authorizes the court in all misdemeanor cases, with the consent of the defendant, to try the issue in lieu of a jury. Is this in conflict with the clause in the Constitution which declares: "Trials of crimes and misdemeanors shall be by a jury of twelve men." We have seen, by a review of the authorities, that where a constitution guarantees "the right of trial by jury," that it is not in the power of the accused in felony-cases to waive this right, but that in misdemeanor cases, where the statute authorizes it, the waiver of such right of trial by jury by the defendant will be binding on him. Why this distinction? Because in the misdemeanor cases, where the Constitution has not declared against such waiver, it has been held that public policy has not been violated by allowing the waiver to be made; but the authorities are numerous where it is decided that, though the Constitution only guarantees to the accused the right to a trial by jury, and in misdemeanors he may waive this right, and have the issue of not guilty tried by the court, yet in felony cases he wlil not be permitted to do so, because it is against public policy to allow it. It is everywhere admitted that, in both felony and misdemeanor cases, the party accused may plead guilty, and in such cases, of course, there is no issue to try.

The language of most of the constitutions we have examined is, in substance, that the right is guaranteed to the accused to a trial by an impartial jury. This is the language, as we have before seen, in the Virginia bill of rights, in full force and effect when the statute under consideration was first enacted. Under such a constitutional provision, there is no doubt that, in misdemeanor cases, the statute could authorize a waiver of the trial by jury, and the trial of the issue by the court. As we have before seen, this statute has been kept on our statute books, and has controlled the practice, ever since our State had an existence.

The clause of the Constitution now under consideration was first put in the Constitution of 1863. The language differs from that of any other constitution I have examined. That which nearest approaches it is found in the Constitution of North Carolina, which is: "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court." As we have seen, the Supreme Court of North Carolina, under this Constitution, has held that, even in misdemeanor cases, the court could not try the issue involving the guilt or innocence of the accused. It does not merely grant the right to a trial by jury, but it goes further, and declares that no other tribunal shall pass upon the issue. There can be no conviction on facts found by the court on the issue. It must, if of any effect, be found by the unanimous verdict of a jury. It not only guarantees the right of jury-trial in all cases of crimes, but declares it to be the policy of the State that the courts shall not try such issues. Of course, the people had the right to put the inhibition in their organic law. It is not left to the courts to declare what the policy of the State should be as to the trials of persons charged with crimes, but the people themselves have there declared, in clear and unmistakable language, what the public policy in that State should be as to such trials and convictions. The language used in the North Carolina Constitution, it seems to us, is no stronger than that used in ours. The declaration that "no person shall be convicted of any crime but by the unanimous verdict of a jury," it seems to us, is the equivalent of saying that "all trials for crimes shall be by a jury, without

whose unanimous verdict the accused shall not be convicted." The language used in our Constitution is not that the citizen, when accused of crime or misdemeanor, is guaranteed the right to be tried by a jury,—a right which, if public policy does not intervene, he may waive; it fixes the tribunal that shall try issues, in criminal cases, not only for felony, but for misdemeanors. It declares: "Trials of crimes and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, open, public, without unreasonable delay, and in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county."

It is argued that this language means no more than this: "In the trial of crimes and misdemeanors, the accused shall have the right to a public trial by an impartial jury." Is there no difference between the right of trial by jury guaranteed, and a positive mandate that the trial shall be by a certain mode, that is, by jury? Mark the language: "Trials of crimes and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men." This declaration, plain and unmistakable, is that trials of crimes and misdemeanors in West Virginia shall in all cases be by jury, unless somewhere else in the Constitution it is provided that they may, under certain circumstances, be in some other mode. It is not elsewhere provided in the Constitution that such trials shall be in any other mode, except in the trial of impeachments. If the intention of the framers of this Constitution had been what it is here contended to have been, they would have used language like the following: "Trials of crimes and misdemeanors, unless herein otherwise provided, or unless in misdemeanor cases, by the consent of the accused, shall be by a jury of twelve men." Would we be warranted in interpolating the words, "unless in misdemeanor cases, by the consent of the accused?" Such liberty with the text would not be allowed in the construction of a will, where it has many times been held that words can not be added, unless required to complete the sense. Shall we apply a less stringent rule in the interpretation of an instrument designed to protect the rights of a people? Is there not here a positive inhibition against the court being substi-

tuted in lieu of a jury to try the issue made on an indict-
ment involving the guilt or innocence of a citizen? We
think there is. If language has any force, we can not see how
there can be doubt what the people meant when they
adopted this language. Here is not only a right of trial by
jury, in cases of crimes and misdemeanors, secured to the
citizens, but a clearly defined public policy by the Constitu-
tion declared, that, in this State at least, there should be no
authority in a court, under any circumstances, to try an issue
in a criminal or misdemeanor case. We are here told that
in West Virginia "the trials of crimes and misdemeanors
shall be by a jury of twelve men." The expression of one
mode of trial, by a well-recognized rule of interpretation,
excludes every other. The exception as to impeachment
trials clearly shows that, in every other case of the trial of
an issue upon an indictment for a crime or misdemeanor, the
trial shall be as therein expressly declared it shall be; that
is, by jury.

It will not do to say that the Constitution only secures the
right to a trial by jury, and that it is understood the trial
shall be so had unless it is waived by the accused. The
plain import of the language excludes any such view. The
language is too plain to permit us to look at contemporane-
ous and practical construction. It is as plain as that other
clause in the same section that requires the trial to be had
in the county where the alleged offence was committed.
There had been for nearly 40 years in existence in Virginia
and this State a statute giving jurisdiction in criminal cases
to the courts of either county, where the alleged offence was
committed within 100 yards of the line dividing two coun-
ties. This Court held that statute unconstitutional. *State*
v. *Lowe*, 21 W. Va. 789.

It is no answer to the construction we have given to say
that this would prevent the Legislature from providing for the
punishment of petty offences by justices or officers of incor-
porated towns and cities. This Court has decided that may
be done, provided the regulations are reasonable. *Mounds-
ville* v. *Fountain*, 27 W. Va. 182. Section 4 of the bill of
rights provides that " no person shall be held to answer for
treason, felony, or other crime not cognizable by a justice,

unless on presentment or indictment of a grand jury." But where a person is indicted for a crime or misdemeanor, and the plea of not guilty is entered, the trial of such issue, under the mandate of section 14 of the same bill of rights, must be by a jury of 12 men.

Section 29 of chapter 116 of the Code, so far as it provides for the trial of misdemeanors by the court in lieu of a jury by the consent of the defendant, is therefore unconstitutional. It may be inconvenient to try all misdemeanor cases by a jury. With that we have nothing to do. The people have, in their Constitution, said they shall be so tried, and to their will we must bow. The judgment should be reversed, and the case remanded for trial.

WOODS. JUDGE:

Deeming the question presented for consideration one of great public importance, instead of simply concurring in the opinion of the President of the Court, I feel it to be my duty to present the reasonings and authorities which brought me to the conclusion which I have reached. The discharge of this duty will be greatly facilitated by briefly collating from the constitutions of all the States of the Union, the parallel provisions contained in each, securing to their several people the right of trial by jury. In doing so, I affix to each the date of the Constitution from which my quotations are taken.

Ala., 1868 : " The right of trial by jury shall remain inviolate, and in all prosecutions by indictment or information the accused has a right to * * * a speedy public trial by an impartial jury." Art I, §§ 8, 13.

Ark., 1868 : " The right of trial by jury shall remain inviolate ; * * * but a jury trial may be waived by the parties in all cases in the manner prescribed by law, and in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county or judicial district wherein the crime shall have been previously ascertained by law." Art. I, §§ 6, 8.

Colo., 1876 : " The right of trial by jury shall remain inviolate in criminal cases. In criminal prosecutions the accused shall have the right * * * to a speedy public trial by an impartial jury of the county or district in which the

offence is alleged to have been committed." Art II, §§ 16, 23.

Cal., 1849: " The right of trial by jury shall be secured to all, and remain inviolate forever. But a trial by jury may be waived by the parties in all civil cases in the manner to be prescribed by law." Art. I, § 3.

Conn., 1818: " The right of trial by jury shall remain inviolate: and in all criminal prosecutions by indictment or information the accused shall have a right  *  *  *  to a speedy public trial by an impartial jury." Art. I, §§ 9, 21.

Del., 1831: " Trial by jury shall be as heretofore. In all criminal prosecutions the accused hath a right to a speedy and public trial by an impartial jury." Art. I, §§ 4, 7.

Fla., 1868: " The right of trial by jury shall be secured to all, and remain inviolate forever ; but in all civil cases a jury trial may be waived by the parties in the manner prescribed by law." Art. I, § 4.

Ga., 1868: Every person charged with an offence against the laws  *  *  *  shall have a public and speedy trial by an impartial jury." Art. I, § 7. " The right of trial by jury, except where it is otherwise provided in this Constitution, shall remain inviolate." Art. V, § 13.

Ill., 1870: " The right of trial by jury as heretofore enjoyed shall remain inviolate, but the trial of civil cases before justices of the peace by a jury of less than twelve men may be authorized by law ; " " and in all criminal prosecutions the accused shall have the right  *  *  *  to a speedy public trial by an impartial jury of the county or district in which the same is alleged to have been committed." Art. II, §§ 5, 9.

Ind., 1851: " In all criminal prosecutions the accused shall have the right to a public trial by an impartial jury in the county in which the offence shall have been committed." Art. I, § 13.

Ia., 1857: " The right of trial by jury shall remain inviolate ; but the general assembly may authorize trial by a jury of a less number than twelve men in inferior courts. In all criminal prosecutions, and in all cases involving the life or liberty of an individual, the accused shall have the right to

a speedy and public trial by an impartial jury." Art. I, §§ 9, 10.

Kan., 1859: "The trial by jury shall be inviolate;" and "in all prosecutions the accused shall have  *  *  *  a speedy public trial by an impartial jury of the county or district in which the offence is alleged to have been committed." Bill of Rights, §§ 5, 10.

Ky., 1850: "The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution;" and "in all  *  *  *  prosecutions by indictment or information the accused hath a right to a speedy trial by an impartial jury of the vicinage." Art. XIII, §§ 8, 12.

La., 1868: "Prosecutions shall be by indictment or information." "The accused shall be entitled to a speedy public trial by an impartial jury of the parish in which the offence was committed, unless the venue be changed." Bill of Rights, Art. VI.

Me., 1820 : "In all criminal prosecutions the accused shall have a right  *  *  *  to have a speedy, public and impartial trial, by a jury of the vicinage except in trials of martial law or impeachment." Art. I, § 6.

Md., 1867: "The inhabitants of Maryland are entitled to the common law of England, and the trial by jury according to the course of that law ;" and " in all criminal prosecutions every man hath a right  *  *  *  to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty." Declaration of Rights, Arts. V, XXI.

Mass., 1770 : "No subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land. And the Legislature shall not make any law that shall subject any person to a capital or infamous punishment, excepting for the government of the army and navy, without trial by jury." Part 1, Arts. XII, XIII.

Mich., 1850 : "The trial by jury shall remain, but shall be deemed waived in all civil cases unless demanded by one of

the parties in such manner as shall be prescribed by law;" and "in every criminal prosecution the accused shall have the right to a speedy and public trial by an impartial jury, which in all courts not of record may consist of less than twelve men." Art. VI, §§ 27, 28.

Minn., 1858: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy, but a jury trial may be waived by the parties in all cases in the manner prescribed by law;" and "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by law." Art. I, §§ 4, 6.

Miss., 1868: "The right of trial by jury shall remain inviolate." "In all criminal prosecutions by indictment or in-information, the accused shall have a right * * * to a speedy and impartial trial by a jury of the county where the offence was committed." Art. I, §§ 7, 12.

Mo., 1865: "The right of trial by jury shall remain inviolate." "In all criminal prosecutions on presentment or indictment, the accused has the right to a speedy trial by an impartial jury of the vicinage." Art. I, §§ 17, 18.

Neb., 1867: "In all criminal prosecutions, and in cases involving the life or liberty of an individual, the accused shall have the right to a speedy and public trial by an impartial jury." "The right of trial by jury shall remain inviolate, but the Legislature may authorize trial by a jury of a less number than twelve men in inferior courts." Art. I, §§ 5, 8.

Nev., 1864: "The right of trial by jury shall be secured to all, and remain inviolate forever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law." Declaration of Rights, Art. I, § 3.

N. H., 1792: "No subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land." "Nor shall the Legislature make any law that shall subject any person to capital punishment, except for government of the army and navy, and militia in

actual service, without trial by jury." Bill of Rights, Part 1, Arts. XV, XVI.

N. J., 1844 : " The right of trial by jury shall remain inviolate ; but the Legislature may authorize the trial of civil suits, when the dispute·does not exceed fifty dollars, by a jury of six men." "In all criminal prosecutions the accused shall have a right to a speedy and public trial by an impartial jury." Art. I, §§ 7, 8.

N. Y., 1846 : " The trial by jury in all cases in which it has been heretofore used, shall remain inviolate forever;" " but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law. Art. I, § 2.

·N. C., 1868 : " No person shall be put to answer any criminal charge, except as hereinafter allowed, but by indictment, presentment, or impeachment." " No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court. The Legislature may, however, provide other means of trial for petty misdemeanors, with the right of appeal." Art. I, §§ 12, 13.

Ohio, 1851 : " The right of trial by jury shall remain inviolate. In any trial, in any court, the party accused shall be allowed   *   *   *   a speedy public trial by an impartial jury of the county or district in which the offence is alleged to have been committed." Art. I, §§ 5, 10.

Oreg., 1857 : " In all criminal prosecutions the accused shall have the right to a public trial by an impartial jury in the county in which the offence shall have been committed." Art. I, § 11.

Penn., 1838 : " The trial by jury shall be as heretofore, and the right thereof remain inviolate." " In all criminal prosecutions by indictment or information the accused hath a right to   *   *   *   a speedy trial by an impartial jury of the vicinage." Art. IX, §§ 6, 9.

R. I., 1842 : " The right of trial by jury shall remain inviolate." " In all criminal prosecutions the accused shall enjoy or have the right to a speedy and public trial by an impartial jury." Art. I, §§ 10, 14.

S. C., 1868 : " The right of trial by jury shall remain inviolate." " No person shall be arrested, imprisoned, despoiled, or dispossessed of his property immunities, or privi-

leges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land. And the general assembly shall not enact any law that shall subject any person to punishment without trial by jury." Art. I, §§ 11, 14.

Tenn., 1870 : " No man shall be taken or imprisoned, or disseized of his freehold, liberty, or privileges, or outlawed or exiled, or in any manner despoiled or deprived of his life, liberty, or property, but by the judgment of his peers, or the law of the land," " In all criminal prosecutions by indictment or presentment, the accused hath the right to a speedy public trial by an impartial jury of the county in which the crime shall have been committed." Art. I, §§ 8, 9.

Tex., 1868 : " In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury." Art. I, § 8.

Vt., 1793 : " In all prosecutions for criminal offences a person hath a right to * * * a speedy public trial by an impartial jury of his country, without the unanimous consent of which jury he can not be found guilty." Ch. 1, Art. X.

Va., 1870 : " In all capital or criminal prosecutions a man hath a right to * * * a speedy trial by an impartial jury of his vicinage, without whose unanimous consent he can not be found guilty." Art. I, § 10.

W. Va., 1872 : " The trial of crimes and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men." Art. II, § 14.

Wis., 1848 : " The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy ; but a jury trial may be waived by the parties in all cases in the manner prescribed by law." " In all prosecutions by indictment or information, the accused shall enjoy the right to a speedy trial by an impartial jury of the county or district wherein the offence shall have been committed, which county or district shall have been previously ascertained by law." Art. I, §§ 5, 7.

A careful examination of these provisions of the several State Constitutions discloses the fact that the declaration, " the right of trial by jury shall remain inviolate," is found in the Constitution of the States of Alabama, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia

Illinois, Iowa, Kansas, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, South Carolina, and Wisconsin.

The declaration " that in all criminal prosecutions the accused shall have" trial or "enjoy," or " be allowed the right to a speedy and public by an impartial jury " is found in the Constitutions of Arkansas, Colorado, Delaware, Georgia, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Nebraska, New Jersey, Ohio, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Vermont, and Virginia.

In the Constitutions of Alabama, Connecticut, Kentucky, Mississippi, Missouri, Wisconsin, and Pennsylvania the same declaration is found, modified so as to read : " In all prosecutions by indictment, information, or presentment, the accused shall have," "enjoy," or " be allowed the right to a speedy public trial by an impartial jury."

The Constitutions of Arkansas, Minnesota, and Wisconsin, declare that this right to a trial by a jury may be waived in all cases ; while the Constitutions of California, Florida, Michigan, Nevada, and New York declare that it may be waived in all civil cases in such manner as may be prescribed by law.

The provisions on this subject contained in the Constitutions of Massachusetts, New Hampshire, South Carolina, and Tennessee are substantial copies of the first sentence of chapter 29 of *magna charta*, which has always been regarded as confirming the right to trial by jury.

Of these provisions in favor of public liberty, however varied in phraseology in the several State Constitutions, it may be properly said that they are not rights granted to the people of the several States, but rights belonging to every individual, of which they could not rightfully be deprived ; but, as legislative power in all ages has been found to be more or less aggressive, the people of the several States, out of abundant caution, deemed it proper to restrict the legislative power in this respect, by declaring " the right of trial by jury to be inviolate," and that " in all criminal prosecutions every man has the right to a speedy public trial by an impartial jury."

Of this invaluable right, inherently possessed by him before the Constitution of his State was adopted, and as it existed

when it was adopted, he can not be deprived except so far as it is authorized by the Constitution itself.

This right of trial by jury in civil cases, as well as in criminal prosecutions, came to the people of Virginia, and thence to us, as the birthright of every Englishman, conceded by *magna charta*, " the great charter of English liberties," which was wrung from King John on the 19th of June, 1215, and repeatedly confirmed by succeeding kings, down to the revolution of 1688, when, in the form of a bill of rights, it was presented to the Prince and Princess of Orange on the 13th of February, 1688, and which, after they became king and queen, was enacted by parliament.

This bill of rights or declaration concluded in these remarkable words : " And they do claim, demand, and insist upon all and singular the premises as their undoubted rights and liberties ;" and the act of parliament recognizes " all and singular the rights and liberties asserted and claimed in said declaration to be true, ancient, and indubitable rights of the people of this kingdom." 1 Bl. Comm. 127.

While the right of trial by jury is thus secured, the manner in which this trial may be had must be prescribed by law, subject only to the limitation imposed on the legislative will, that the exercise of the right shall not be denied, or clogged with conditions so unreasonable as to amount to a practical denial of the right itself.  1 Bish. Crim. Proc., § 894.

While I neither admit nor deny the proposition that where the Constitution of the State merely declares that the right of trial by jury shall be inviolate, and that in criminal prosecutions the accused has the right to a speedy public trial by an impartial jury, the Legislature may, in the absence of any provision in the Constitution expressly or by any necessary implication forbidding the same to be done, prescribe the manner in which the accused may waive his right to be tried by a jury, yet *I maintain that where the Constitution itself expressly or by necessary implication declares that the trial must be by a jury, that the Legislature can not, even with the consent of the accused, substitute the court in lieu of a jury, and confer upon it jurisdiction to try a cause, the trial of which has been exclusively vested in the jury.*

This, like any other provision, is to be construed by the same rules of interpretation. It is wholly immaterial whether a different or more latitudinous construction than is imported by the words thereof, taken in their common acceptation, would be more or less convenient.

"Whether we are considering an agreement between parties, a statute, or a Constitution, with a view to its interpretation, the thing which we are to seek is the thought which it expresses."

"To ascertain this the first resort in all cases, is the natural signification of the words employed in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning,which involves no absurdity and no contradiction between different parts of the same writing, then that meaning apparent upon the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction."

"That which the words declare is the meaning of the instrument, and neither courts nor legislatures have a right to add to or take away from that meaning." Cooley Const. Lim. 57.

In interpreting clauses, we must presume that words have been employed in their natural and ordinary meaning. Marshall, Chief Justice, says : "The framers of the Constitution, and the people who adopted it, must be understood to have employed words in their natural sense, and to have understood what they meant." *Gibbons* v. *Ogden*, 9 Wheat. 188 ; *Settle* v. *Van Evrea*, 49 N. Y. 281 ; Cooley Const. Lim. 59.

In *Settle* v. *Van Evrea, supra*, the Court of Appeals of New York laid down the rule as follows : "Where the terms of a written constitution are clear and unambiguous, and have a well-understood meaning and application, effect must be given to the intent of its framers as indicated by the language employed. The operation and effect of the instrument will not be extended by construction beyond the fair scope of the terms employed, merely because the more restricted and literal interpretation might be inconvenient or impolitic."

And in *Railroad Co.* v. *Miller*, 19 W. Va. 408, this Court held "that, when the text of a constitutional provision is plain and unambiguous, courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument itself."

I admit the full force of the rules for the construction of a statute alleged to be unconstitutional, recognized and acted upon by this Court in the cases of *Bridges* v. *Shallcross*, 6 W. Va. 562, and of *Slack* v. *Jacob*, 8 W. Va. 612, that the presumption is in favor of the constitutionality of the law, and that, if there be a reasonable doubt as to its constitutionality, such doubt must in all cases be resolved in its favor, and that if the statute can stand under any reasonable construction of the Constitution, not inconsistent with its plain meaning and intent appearing on the face of the Constitution, it is the duty of the court to uphold the statute. But the reasonable doubt is one which arises upon the reading of the instrument itself, and not a doubt which may arise whether it will bear a construction departing from or enlarging the plain meaning of the constitutional provision as indicated by "the words employed therein when understood in their natural sense."

It may be, that the construction contended for on the part of the State, will lessen the expense as well as facilitate the trials of misdemeanors,—in other words, that the trial by the court, with the consent of the accused, will in every respect be more convenient than a trial by jury ; and it may be true that the practice has continued for many years without any person objecting to the practice.

But I agree with the Supreme Court of Indiana "that, in construing Constitutions, courts have nothing to do with the argument *ab inconveniente*, and should not bend the Constitution to suit the law of the hour;" and with Bronson, Chief Justice, in what he says in *Oakley* v. *Aspinwall*, 3 N. Y. 568 : "It is highly probable that inconveniences will result from following the Constitution as it is written ; but that consideration can have no force with me. It is not for this Court, but for those who made the instrument, to supply its defects. If the Legislature or the courts may take that office upon themselves, or if, under color of construction, or upon any

other specious ground, they may depart from that which is plainly declared, the people may well despair of ever being able to set any boundary to the powers of government. My rule has always been to follow the fundamental law as it is written, regardless of consequences."

"Acquiescence for no length of time can legalize a clear usurpation of power, where the people have plainly expressed their will in the Constitution, and appointed judicial tribunals to enforce it. A power is frequently yielded to, merely because it is claimed; and it may be exercised for a long period, in violation of the constitutional prohibition, without the mischief which the Constitution was designed to guard against appearing, or without any one being sufficiently interested in the subject to raise the question; but these circumstances cannot be allowed to sanction a clear infraction of the Constitution. We think we allow to contemporary and practical construction its full legitimate force when we suffer it, where it is clear and uniform, to solve in its own favor the doubts which arise on reading the instrument to be construed." Cooley Const. Lim. 71.

It is an admitted fact that all accusations of criminal conduct are tried at the common-law by jury; and, wherever the right to this trial is guaranteed by the Constitution without qualification or restriction, it must be understood as retained in all those cases which were triable by a jury at the common-law.

I am free to admit that, where this right of trial by jury is simply retained in the Constitution "without qualification or restriction," the Legislature may, in cases of misdemeanor, with the consent of the accused, provide that the trial may be by the court itself, or by a jury of less than twelve.

While considering this question I desire that the important historical fact, wholly overlooked in this discussion, may be kept prominently in view—that, at the time of the formation of the present Constitution of West Virginia, the Constitutions of all the States from which I have quoted, except that of Colorado, had been adopted; and it must be presumed that the constitutional convention of West Virginia which framed its present Constitution understood the true intent and meaning of the parallel provisions in the Constitutions

of said 38 States as well as the construction placed thereon by their highest judicial tribunals.

And the same historical fact is equally true with regard to the formation of the Constitution of 1863, from which section 14 of article 3 of our present constitution was formed.

With all these as well as all former Constitutions of the several States before them, the constitutional convention of 1872 of this State secured to the people the right of trial by jury by sec. 14 of Art. 3, which declared, in language of unmistakable import, that "trials of crimes and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offence was committed, unless upon the petition of the accused, and for good cause shown, it is removed to some other county."

These "words embody a definite meaning, which involves no absurdity," and it is not pretended that there is any contradiction between them and any other part of the constitution. The plain meaning of these words appears on the face of the instrument, and I do not feel myself at liberty to say, "That was not the meaning which was intended to be conveyed."

In my judgment, it is a case where there is no room for construction, and one where there is neither apology nor excuse for the Court to take upon itself the office, under color of construction, to depart from the plain meaning of this constitutional provision; and especially when no better authority for doing so can be produced than the fact that the Constitution has been repeatedly violated in this particular, without any person feeling himself sufficiently interested in the subject to raise the question; or that a trial by the court, with the consent of the accused, is a more convenient and less expensive mode of trial than that imperatively prescribed by the Constitution itself.

The language used in our Constitution is neither similar to nor synonymous with parallel provisions found in any of the State Constitutions except that of North Carolina. It is, in fact, a wide departure from all of them, which not only secures right of trial by a jury, but provides that "trials of crimes and misdemeanors, unless therein otherwise provided, shall be by a jury of twelve men."

The constitutional provision of North Carolina is, in substance and effect, of the same import. It declares: "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court. The Legislature may, however, provide other means of trial for petty misdemeanors, with the right to appeal."

As the trial of crimes and misdemeanors in this State is required to be " by a jury of twelve men," it follows that here, as well as in North Carolina, no person can be convicted of any such crime or misdemeanor but by the unanimous verdict of a jury of good and lawful men in open court; for by the common-law a jury could only be composed of twelve good and lawful men, and the trial could only be had and the verdict rendered in open court.

This question has been three times before the Supreme Court of North Carolina, and in each case it was distinctly held that no conviction of any crime could be had without a trial by jury although to do so, it had in the first case to declare a statute unconstitutional, and in the latter two cases, to hold that such trial by jury could not be waived even by consent of the accused. *State* v. *Moss*, 2 Jones (N. C.) 66; *State* v. *Stewart*, 89 N. C. 563; *State* v. *Holt*, 90 N. C. 749.

In *State* v. *Moss*, *supra*, the accused was indicted for assault and battery in 1854, when the constitutional provision then in force was the same as the present. The accused pleaded a former conviction on a trial for the same offence, before the intendant of police, before whom there could be no prosecution by indictment, of the town of Charlotte. The act of assembly set forth in the plea was offered in evidence, and it was admitted that the act conferred on the intendant the authority which he exercised on the trial of the accused before him. The accused was convicted in the trial court upon the indictment, and he appealed.

The Supreme Court, quoting with approbation the rules of construction, that " every act of the Legislature is presumed to be constitutional, and within its authority, and is to be declared unconstitutional only when no doubt exists; but where the words used are plain and clear, and the sense distinct and perfect arising from them, there is, in general, no room for construction or interpretation,"—nevertheless held, that

the act of assembly was a clear and undoubted violation of both provisions of the Constitution, and that the acquiescence of the accused in the judgment before the intendant did not give him jurisdiction of the case.

In *State* v. *Stewart, supra,* the accused was indicted for assault and battery, to which he pleaded not guilty and a former conviction. A jury trial was waived, and by request, the court found the facts, and it was agreed that, if in law the defendant is guilty, then there should be a verdict of guilty ; but, if in law he is not guilty, then there should be a verdict of not guilty. The court found the defendant guilty, and, his motion in arrest of judgment being overruled, he appealed.

The Supreme Court held that the trial court "had undertaken to serve in the double capacity of judge and jury, and try the defendant without a jury, which it had no authority to do, even with the consent of the prisoner. The action of the court in this respect was in violation of the Constitution, and in subversion of a fundamental principle of the common-law."

In *State* v. *Holt, supra,* the defendant was indicted for "cruelty to animals." The defence in this case also was a "former conviction." It does not appear that the defendant waived, or undertook to waive, his right to a trial by a jury ; but the facts were agreed between the State and the defendant, which were intended to be treated as a special verdict; and the trial court, on consideration of the facts thus submitted, found the issue against the defendant, and gave judgment for the State, and the defendant appealed.

Merrimon, Judge, delivering the opinion of the Supreme Court, said : "There was not the remotest purpose, we are sure, to infringe the right of trial by jury in a crim-. inal action; but, for convenience sake, and to save time, (because the facts were not disputed,) the facts of the case were agreed upon by the State and the defendant, and submitted to the judge, instead of letting a jury hear the evidence, and render a verdict upon the issue or find a special verdict." "In our judgment, this was not only irregular, but wholly without the sanction of law. There is no statute that authorizes such a proceeding, and the Constitution for-

bids it. ' No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court.' No jury was impanelled to try the issue; there was no verdict of a jury; there was no conviction. The judgment of the court had nothing to warrant it, and there was nothing on which it could properly rest. The defendant could not consent to a conviction by the court, and it had no authority to try the issue of fact raised by the pleadings."

This decision fully meets the question, and covers the whole ground; and I respectfully submit that it leaves no room for any implication whatever that, if there had been a statute authorizing such waiver of a trial by jury, conviction in that case would have been sustained. On the contrary, such an implication is excluded when the court declares, not only that there was " no statute authorizing such procedure," but " the Constitution forbids it; " for, if forbidden by the Constitution, it is of necessity prohibited.

The respectable authority of Mr. Bishop has been appealed to with great confidence to maintain the judgment in this case on behalf of the State. The conclusions of this eminent text-writer always challenge my profound respect; and when he announced the general rule on this subject, in section 893, Crim. Proc., to be that " if a statute authorizes the court to try, with the consent of defendants, their cases without a jury, a defendant who thus consents, and is thus tried, has thereby waived his rights, and he can not complain," I felt it to be incumbent on me to examine the numerous authorities cited in the note to that clause of the section; and, upon doing so, I found every one of them from the courts of States, whose constitutional provisions on that subject merely secured the right of trial by jury, without directing that such criminal prosecutions should be tried by a jury, and for that reason I do not deem them of much weight in determining the question under consideration in this case. And the same, with two exceptions, is equally true of the authorities cited by him in note 4 in support of the third clause of said section, where he says: " Though some of the cases are obscure, and perhapse adverse, it appears to be at least the better doctrine that the defendants can make any waiver for which the statute provides."

One of these excepted cases is *Sarah* v. *State*, 28 Ga. 576. The prisoner was a slave. She was indicted for an attempt to poison all her master's family. She was tried by a jury, and found guilty, and she was sentenced to be hanged. By the consent of the counsel, the jury was selected from the grand jury list, but whether the indictment against her had been found by that grand jury or not does not appear from the report of the case.

Upon a writ of error it was contended that the judgment was erroneous because the jury had thus been taken from the grand jury list; but the Supreme Court held that there was no error in allowing the prisoner to be tried by a jury taken from the grand jury list by the consent of both counsel for the State and the prisoner.

Lumpkin, judge, delivering the opinion of the Court, said : "We lay down the broad proposition that as a prisoner may waive even a trial itself, and be capitally punished upon his own confession of guilt, he may waive any minor right or privilege; the greater including the less. Besides, by the act of 1856 all persons between the ages of twenty-one and sixty are qualified as jurors in criminal cases. There is, therefore, no legal disqualification attached to any of the jurors who tried the case. Perhaps, a jury taken from the grand jury list is the best that could be selected to try a slave. A slave has no peers or equals by whom he can be tried. He finds his best security in the grand jury box."

It will be observed that the constitutional question whether the prisoner could waive a trial by jury, and consent to be tried by the court, did not and could not arise. The prisoner did not attempt to waive her right to be tried by a jury. She was tried by a jury, and the court held that there was no error in selecting the jury from the grand jury list. The broad proposition announced by the learned judge, so far as it regards the right to waive anything save only the objections which she might have made to the grand jury, even if they had found the indictment, is mere *obiter dictum*.

The other excepted case is that of *Langbein* v. *State*, 37 Tex. 162. In this case the defendant was tried before a justice upon a plea of not guilty. No jury was demanded. The

justice, finding him guilty, entered judgment against him for $25.00, fine, and costs. No motion was made for new trial, but an attempt was made to take an appeal to the District Court, where, upon the calling of the case for trial, he moved to quash the appeal and dismiss the suit; and that court, being of opinion that he had not lawfully perfected and taken any appeal to that court, dismissed the appeal, and ordered the justice to proceed to execute his judgment.

By article 912, Pen. Code Tex., the defendant in a case of misdemeanor of which a justice of the peace has jurisdiction to finally try and determine, may waive a trial by a jury, and in such case the justice shall proceed to hear and determine the cause without a jury.

By article 913, Id., in case the defendant does not waive a trial by jury, a jury of six is summoned for that purpose.

By article 917, Id., in all such trials before a justice of the peace, the State and each of the defendants shall have three peremptory challenges, and also any number of challenges for cause.

By article 856, Id., in all appeals from justices and other inferior courts to County Courts, the trial shall be *de novo* in the County Court, the same as if the prosecution had been originally commenced in that court.

By article 708, Id., in the County Court in all criminal actions, the jury consists of six men, and the verdict must be concurred in by each of them. And by article 72 the County Courts have exclusive original jurisdiction of all misdemeanors, except those involving official misconduct, and except cases in which the highest fine that may be imposed under the law may not exceed $200.00, and except in counties where there is established a criminal district court.

With these statutory provisions before it, which secured the trial by jury of six in all cases, whether commenced in the County Court, or carried there by appeal properly taken and perfected, the only question before the court was whether the defendant had properly taken and perfected an appeal.

The court held that no such appeal had been properly taken to the judgment of the justice, because the defendant had failed to make a motion before the justice for

a new trial, and that " the overruling of a motion for a new trial is a prerequisite to an appeal from a judgment of a justice of the peace to the District Court;" that section 17 of article V of the Constitution gives justices of the peace jurisdiction over all offences of a lower grade than felony; that "judgments of the District Courts rendered in cases appealed from justices' courts are final, and a further appeal to the Supreme Court is not allowable."

Walker, judge, delivering the opinion of the Court, said " that section 20 of the same article of the Constitution declares that justices shall have such civil and criminal jurisdiction as shall be provided by law. This implies a power in the Legislature to confer on justices of the peace any jurisdiction not prohibited elsewhere by the Constitution. What, then, is wanted in the power of the Legislature to confer the jurisdiction claimed and exercised by the justice of the peace in this case? Nothing whatever; and the Legislature has conferred the power."

Thus it will be perceived that neither of these cases militates against my general proposition in regard to the cases referred to by Mr. Bishop in note 4 to the third clause of said section 893.

To my mind it is perfectly apparent that neither the peculiar terms of section 14 of Art. III of the Constitution of this State, nor of the parallel provision in the Constitution of North Carolina, nor the decisions of the Supreme Court of that State, had been called to, or they had escaped, his attention.

It only remains to consider that part of the argument of the Attorney-General based upon the facts that the twenty-ninth section of chapter 116 has been upon the statute books of Virginia and West Virginia for a period of forty years, and that the convention which framed the present Constitution, failed to perceive any conflict between this statute and the Constitution of 1863, which in that respect is identical with the present Constitution.

This argument loses much of its force when we remember that this section of the statute first appeared in the Virginia Code of 1849, under the Constitution of 1830, which, as well as that of 1851 and of 1870, contained the same provision.

Section 29 of chapter 116 was carried into the Code of West Virginia from section 38 of chapter 162 of the Virginia Code of 1849; as was the twelfth section of chapter 152 of the Code of West Virginia from the twelfth section of chapter 199 of said Code of 1849.

The constitutionality of the twelfth section of chapter 152 of the Code of West Virginia remained unchallenged from the creation of this State down, until this Court in the case of *State* v. *Low*, 21 W. Va. 782, decided it was unconstitutional, null, and void; being in conflict with section 14 of article 3 of our Constitution.

This Court did not seek to avoid the conflict between the Constitution and the statute because it had remained unchanged, notwithstanding the convention of 1872 retained, unchanged in this respect, the same provision contained in the Constitution of 1863.

The clause of the fourteenth section of Art. III of the Constitution under consideration, in that case, like the first clause of the same section now under consideration, in my opinion "left no room for construction," and I have no right to add to or take away from the plain meaning of the provision.

Neither can I consent that any length of time can legalize a clear usurpation of power, where the people have plainly expressed their will in the Constitution, unless the same has become a rule of property.

I am therefore of opinion that so much of section 29 of chapter 116 of the Code as pretends to authorize the accused, in the trial of any criminal prosecution for a misdemeanor, to waive the right to have a trial thereof by a jury, and to have the whole matter of law and fact heard and determined by the judgment of the court, is unconstitutional and void; the same being in conflict with the fourteenth section of the third article of the constitution of the State.

SNYDER, JUDGE:

Upon the question of the constitutionality of our statute (section 29, ch. 116, Code) providing that in any case, except in cases of felony, the parties may waive a jury, and consent to a trial by the court, I am unable to agree with the conclusion announced in the preceding opinion. In fact, I think

that conclusion is a clear *non sequitur*, wholly unwarranted by the premises of the opinion. The whole history of English and American jurisprudence has been searched in vain to find a single precedent holding a statute unconstitutional which permits the accused in misdemeanor cases to waive a jury, and consent to a trial by the court. None such are referred to in the preceding opinion, and it is not pretended that any such exist. Some of the States, as shown in said opinion, hold that such a statute is valid and constitutional even in felony cases. Mr. Bishop, under the heading, "Constitutional Guaranties," after discussing the constitutional right of the accused to be informed of the "nature and cause" of the accusation, says : "As accused persons may waive constitutional rights, they may, doubtless, under some circumstances, waive the protection of this provision. They can not do this when its effect would be the giving of a jurisdiction to a court." 1 Bish. Crim. Proc. §§ 112, 123.

On the direct point now under consideration the same author says : "If a statute authorizes the court to try, with the consent of defendants, their cases without a jury, a defendant who thus consents, and is thus tried, has thereby waived his rights, and he can not complain." Id. § 893. The note cites in support of this text, cases from the following States: Massachusetts, Michigan, Illinois, Maryland, Missouri, Iowa, Ohio, New York, and Indiana. "Though some of the cases are obscure, and perhaps adverse, it appears at least to be the better doctrine that defendants can make any waiver, for which the statute provides, of a jury trial. But, without such statutory provision, a waiver is not always competent ; as, for example, it can not give the court jurisdiction. Hence as, without statutory authorization, a court has no power to try a prisoner otherwise than by jury, a party can not give it jurisdiction by consent." Id. ; the note to this text citing cases from the following States : Massachusetts, Georgia, Texas, Alabama, New York, Indiana, Maine, Missouri, Michigan and Arkansas.

It will be observed that Bishop makes no distinction, in regard to the waiver of trial by jury, between felonies and misdemeanors; but, as he says, some of the felony cases "are obscure, and perhaps adverse," to this doctrine. There

is, however, no obscurity or conflict in the decisions in regard to misdemeanors. All of these distinctly recognize the doctrine that statutes authorizing the waiver of a jury by the consent of the accused are constitutional. In several of the States it has been held that such waiver, in the absence of any statute authorizing it, is an attempt to confer jurisdiction, and therefore a violation of the common-law right of trial by jury. Of this class are the cases of *Neales* v. *State*, 10 Mo. 314 ; *Wilson* v. *State*, 16 Ark. 601 ; *Bond* v. *State*, 17 Ark. 290 ; *State* v. *Stewart*, 89 N. C. 563 ; and *State* v. *Holt*, 90 N. C. 749,—referred to in the preceding opinion. See, also, Whart. Crim. Pl. § 733, where some of the reasons are given to prove why it is competent for the accused to consent to waive a jury-trial when authorized to do so by statute.

It is attempted to overthrow and disregard this long line of uniform decisions upon what must be regarded as a mere fanciful and arbitrary distinction between the language of the Constitution of this State and that used in the Constitutions of the other States. It is admitted that our present Constitution does not differ in substance, respecting the provision under consideration, from that adopted for this State in the year 1863 ; and it must also be admitted that, when the Constitution of 1863 was adopted, this statute, providing for the waiver of a jury-trial, was then in force; that it has continued in force ever since ; that it has been repeatedly re-enacted by the Legislature since the adoption of the Constitution ; that perhaps three fourths of the misdemeanor cases tried in this State have been tried without a jury, under the provisions of this statute. And yet it never occurred to any one, whether party, counsel, or court, that this statute was unconstitutional, or, if such a fanciful idea ever did occur to any one, he had too little respect for it to put it upon record; for of the many cases of that kind brought to this court, in which the validity of this statute was necessarily recognized, there is not one in which it appears the constitutionality of the statute was ever questioned by either counsel or court. This uniform and unquestioned practice, it is conceded, would not conclude this court in regard to a statute which was a plain and positive violation of the Consti-

tution, but it is entitled to great consideration, and ought to control, in a case where there is the least doubt as to the unconstitutionality of the statute. It certainly would be dangerous and unprecedented to overthrow and repudiate it upon some fanciful and arbitrary distinction in the mere phraseology of the various State Constitutions in regard to the same thing; and this, too, in the face of the conceded fact that, notwithstanding the Constitutions of the other States differ from each other verbally fully as much as ours does from many of them, no precedent can be found in any of them for holding any statute allowing the waiver of a jury-trial in misdemeanor cases unconstitutional. And, moreover, this verbal criticism and questionable departure from the settled practice of this State and the uniform precedents of the other States, is based upon the uncertain and unprovable assumption that the words of our Constitution in respect to jury-trials were employed for the express purpose of declaring a public policy different from that of any of the other States. It is a legal axiom that there is nothing so uncertain and undefinable as public policy, and nothing so dangerous as to make it the basis of judicial construction and legal interpretation.

But let us examine the constitutional provisions of some of the other States, and see if they differ so essentially from ours as to give any warrant for the radical departure suggested. New York: "The trial by jury in all cases in which it has been heretofore used, shall remain inviolate forever. But a jury trial may be waived by the parties in all civil cases in the manner prescribed by law." Ohio: "The right of trial by jury shall be inviolate." Texas: "In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury." Georgia: "Every person charged with an offence against the laws * * * shall have a public and speedy trial by an impartial jury." See *Steamboat Co.* v. *Foster*, 5 Ga. 194; *Sarah* v. *State*, 28 Ga. 576. Illinois: "In all criminal prosecutions the accused shall have the right * * * to a speedy public trial by an impartial jury of the county," etc. Many other Constitutions, showing substantially the same guaranties, might be referred to, but for all purposes these are sufficient.

The authorities before cited show that in each of the above States the courts have held that the accused may waive a jury-trial in misdemeanor cases, and some of them have held that he may do so in felony cases, where the statute-law of the State authorizes it. The North Carolina Constitution declares: "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court." In the cases of *State* v. *Stewart* and *State* v. *Holt, supra,* the Supreme Court of that State held, in the absence of any statute authorizing the court to try a criminal case without a jury, that the consent of the accused could not confer such authority. The court says: "The defendant could not consent to a conviction by the court. It had no authority to try the issue of fact raised by the pleadings. * * * The Legislature has not provided a means for the trial of cases like this, different from the ordinary method provided by law." 90 N. C. 754. This language raises a strong implication that the conviction in that case would have been sustained if there had been a statute like ours, authorizing the court to try the case without a jury.

The above quotations show that the language in some of the Constitutions of States, where it has been held that a jury may be waived, is quite as imperative as that used in our Constitution. Notably is such true of the States of New York, Texas, and Georgia; yet in none of these States, notwithstanding the positive and imperative language in which the trial by jury is guarantied, did the courts discover the hidden and undefinable public policy which is now for the first time invoked to destroy the practice and precedents of at least a century. There never has been in this State, and I believe there never was in Virginia, any statute authorizing the accused to waive a trial by jury in felony cases. Whether such a statute would be constitutional or not, if enacted, it is unnecessary to inquire. It is suffcient to say that the absence of such statutes fully explains the difference in the practice in those States in the trial of felony and misdemeanor cases. Without a statute permitting the waiver of trials in misdemeanor cases, I should not hesitate to hold that no consent or waiver by the accused could confer jurisdiction upon the court to try such cases without a jury; but

I am wholly unprepared to hold the statute authorizing such waiver unconstitutional.

It is a fundamental proposition of law, which has been repeatedly sanctioned and applied by the Court, that when a plain and palpable infraction of a Constitution is shown in a statute, upon the validity of which the Court is called upon to decide, it is, of course, one of its highest and most solemn duties to declare such statute unconstitutional and void. If, however, it be only upon slight implication or inconclusive reasoning that the supposed infraction can be made out, the court should never undertake to rescind and annul the solemn and deliberate act of the legislative department of the government. To doubt in such case should be to affirm. *Eyre* v. *Jacob*, 14 Gratt. 422, 426. The expediency, policy, or inexpediency of the statute is a question for the Legislature alone to determine, and one with which the courts have no concern. It is the duty of the Court to presume in favor of the validity of the statute until its violation of the Constitution is proved beyond all reasonable doubt. *Bridges* v. *Shallcross*, 6 W. Va. 562, 574; *Slack* v. *Jacob*, 8 W. Va. 612. According to these cardinal principles, if there was any reasonable doubt as to the constitutionality of the statute under consideration, it would be our solemn duty to sustain it; but, for the reasons hereinbefore stated, I have no doubt as to its constitutionality, and am therefore of opinion that it should be held valid, and the judgment of the Circuit Court affirmed.

GREEN, JUDGE:

The sole question in this case is whether section 29, ch. 116, Code of W. Va. 1887, so far as it authorizes a party prosecuted for a misdemeanor to waive a right to have a jury, and the court, when this has been done of record, to hear and determine the whole matter of law and fact, and render judgment thereon, is unconstitutional, null, and void, because in conflict with section 14 of Art. III of the present Constitution of this State. See Code 1887, p. 19. This statute has always been in force in this State; it being taken *verbatim* from chapter 162, § 38, Code of Va. 1849. See Code Va. 1860, p. 693; section 29, ch. 116, Code W. Va. 1868, p. 584; Code

W. Va. 1887, p. 584. So, too, section 14 of Art. III of present Constitution, claimed to be in conflict with this statute, has always been in force in this State; it being when this State was formed, inserted in our Constitution in *verbatim* the same language in which it now appears in our Constitution, (see section 8 of Art. II of our first Constitution; Code W. Va. 1868, pp. 21, 22;) and also inserted in the same language in our second Constitution, (see sec. 8, Art. II, Const. 1872–73.)

The portion of this constitutional provision claimed to be in conflict with this statute is as follows: " The trials of crimes and misdemeanors, unless herein otherwise provided, shall be by jury." This constitutional provision, as well as this statute, have not only been in force in this State from its formation, but both of them have been re-enacted in the same identical language by the convention which framed our Constitution, and by the Legislature of West Virginia in the revisal of 1868. And from the formation of this State to the present time, under the provisions of this statute, all the courts of this State, when, in misdemeanor cases, there has been, by consent, a waiver of the right of trial by jury entered of record, have constantly heard and determined the whole matter both law and fact, and thereupon given judgment. Many such judgments have been brought before this Court; sometimes four or five in a single year, as appears from Judge Johnson's opinion, and yet it has never been in any case before claimed by counsel in these numerous cases, nor has it ever been suggested heretofore by any member of this Court, that this statute was in any respect unconstitutional, as in conflict with this provision of our Constitution. Besides, in most of the States their Constitutions have provisions in reference to the trial by jury of criminal cases more or less like the provision in our Constitution, and yet in not a single State in the Union, where a statute has been passed authorizing the court to hear and determine a misdemeanor case and render judgment without the intervention of a jury, where the parties waive their right of trial by a jury, has it ever been held that such a statute was unconstitutional and void, as in conflict with such constitutional provisions. And the text writers lay down this as the law.

For instance, Bishop, in his work on Criminal Procedure, (volume 1, § 759,) says:

"If a statute provides for a trial to be conducted without a jury, then authorizes an appeal, and provides for a jury trial of the cause upon the appeal, it does not violate the Constitution by reason of its merely erecting this vestibule through which the parties may enter to find the jury behind. So, *a fortiori*, if the accused has the option to have his case submitted either to the judge or jury, and he chooses the former, or does not demand a jury trial, he has waived his constitutional right; and he can not complain either of what was done, or of the legislative enactment under which the court proceeded. At the same time the judge had no authority to serve in the double capacity of court and jury, and try a prisoner without a jury, even with the consent of parties, unless expressly authorized by statute."

To sustain the last of these positions, Bishop refers to *State* v. *Maine*, 27 Conn. 281; *Neales* v. *State*, 10 Mo. 498. The last position is also sustained by *State* v. *Stewart*, 89 N. C. 563, and *State* v. *Holt*, 90 N. C. 749. I refer to these two North Carolina cases because Judges Woods and Johnson, in their opinions, seem to regard these decisions as in effect holding that a statute authorizing a court to try a misdemeanor case without the intervention of a jury, with the consent of parties, the accused expressly waiving his constitutional right to be tried by a jury, would be unconstitutional, because in conflict with a provision in the Constitution of North Carolina which they regard as substantially the same as the provisions in our Constitution to which I have referred. Certainly, no such question was either decided or considered by the North Carolina court in either of these cases, or in any other case in North Carolina. It is impossible that any such question ever could have arisen before the North Carolina courts, or that it ever could have been considered by those courts, because there never has been passed in North Carolina any statute similar to ours, authorizing the parties in any criminal case to waive a jury, and to submit the whole question of law and facts to the court, and authorizing the court, when this was done in any case, to pronounce judgment without the intervention of a jury. In the last of these cases, *State*

v. *Holt*, 90 N. C. 749, Judge Merrimon, in delivering the opinion of the court, says: "Such proceeding was not only irregular, but wholly without the sanction of law. There is no *statute* that authorizes such a proceeding, and the *Constitution forbids it.*" The last words which I have italicized Judge Woods regards as the equivalent to a declaration by the court that, as "the Constitution forbids such a proceeding, any statute authorizing it would be null and void." I do not so understand Judge Merrimon's language. I understand him to say "that, in the absence of any statute law authorizing such proceeding, the Constitution forbids it."

So understanding these decisions, they are in perfect accord with the decisions elsewhere, which hold, to use the language of Bishop above quoted: "A judge has no authority to serve in the double capacity of court and jury, even with the consent of parties, unless expressly authorized by statute." See *State* v. *Maine*, 27 Conn. 281; *Neales* v. *State*, 10 Mo. 498. The North Carolina courts have not in these or any other case on this question decided anything more than the proposition laid down by Bishop. I do not think Judge Merrimon intended to say more. His language, as well as the language of the court in *State* v. *Stewart*, 89 N. C. 563, ought to be construed in reference to the cases actually before them for decision. As there was no statute in North Carolina authorizing parties in any criminal case to dispense with a jury, or authorizing the court to try any criminal case, under any circumstances, without a jury, the language used in deciding these cases ought not to be distorted into a hypothetical opinion as to whether, if such a statute existed, it would be constitutional, unless the language would bear no other meaning. If such was the meaning of the language, it would be, of course, nothing but an *obiter dictum* of the judge who used the language; but I do not understand that, when properly interpreted, any language has been used by any judge in any North Carolina case which indicates that he thought that such a statute as ours, authorizing a court to decide a misdemeanor case where the parties waived the right of trial by jury, would be void, as a violation of the North Carolina Constitution, or that anything on this ground has been tried by any North Carolina judge.

I know of no decision in any State where a statute like ours under consideration would be held as void because of a violation of any provision in their Constitution; but, on the contrary, so far as I know, such statutes have always been held valid and constitutional in every State in the Union where such statutes have been passed. I understand Judge Woods and Judge Johnson coincide with this in their opinions, excepting only as to the State of North Carolina; and there, as we have seen, the question has never arisen, and never can arise till the North Carolina Legislature passes some statute similar to the one we are considering. But they insist that these uniform decisions everywhere are entitled to no consideration, because the constitutional provisions in all the States of the Union with reference to the trial of misdemeanor cases are obviously substantially different from the provisions in our Constitution and that of North Carolina; and that in all the States where it has been held that, if authorized by statute, the court may try misdemeanor cases if the accused waives his right to a trial by jury, their Constitutions could reasonably bear the interpretation that they did not require that prosecution for misdemeanors shall always be by jury, as it is insisted ours most obviously does, but they only meant to confer on the accused a right to demand a jury; and therefore the courts properly held that if the accused waived the right to be tried, in a misdemeanor case, by a jury, and the statute law when this was done authorized the court, without a jury, to hear and decide the case, such statute law would violate no constitutional provision, and such trial would be legitimate and valid.

Now, I understand the construction put generally on the constitutional provision in the different State Constitutions, however variously worded, has been that it forbids the Legislature to provide by statute law for the trial of criminal cases in courts of record by the courts themselves, or from providing by law that, as a part of the proceedings in such case, a jury should in such criminal cases be dispensed with. But as the provision that a jury should constitute, in every case, an essential part of the mode in which any one accused of crime was tried in any court of record, was obviously designed principally for the protection of the accused, it is

clear that, on general principles, this constitutional provision conferring on him this right, he ought to be permitted to waive it, if a statute conferred on the court the power to try such case without a jury, by consent of the parties, unless it could be shown that this generally admitted right to waive any right conferred on one by either the law or the Constitution was inapplicable to this particular case.

Now, from Bish. Crim. Proc., ch. 25, "On the Doctrine of the Waiver of Rights," it would appear that, as prisoners anciently accused in England of treason or felony were not allowed counsel to assist them in their defence before a jury, but as it was deemed a part of the duty of the judge to assist them, and act as their counsel, there was in such cases but very limited room for the operation of this doctrine of the waiver of rights by the accused; for the waiver of a right by the accused, proceeding from the advice of the court, would be in its nature a judicial error, of which the accused ought to be allowed to avail himself. In this way it might happen that a particular right of such criminal could not be waived; and this having been established as law, though the reason on which it was based had ceased when the accused was permitted in every criminal case to have the aid of counsel, yet some courts would hold that such particular right could, after this change in the law, be waived; while others would still adhere to the ancient law, and hold that such particular right could not be waived. Accordingly, we find much conflict of authority as to whether now a person accused of felony can waive certain rights; and among the cases in which there is such conflict is the question whether a person accused of felony can effectually waive his constitutional right of trial by a jury even when permitted to do so by statute law. But it has never been anywhere questioned that this trial by jury might, if the court was authorized to try the case by consent of parties, be waived by the accused in a misdemeanor case; for in such case the accused was always permitted to appear by counsel, and always could have waived a right of trial by jury.

As appears from the provisions of the Constitution of the different States with reference to the trial of criminal cases by juries, there is no provision in any State Constitution

whereby, if the State assents to it, the accused in any criminal case is prohibited from waiving his constitutional rights of trial by jury, or any other constitutional rights. Whether he has a right to waive this or any other particular constitutional right, or any other right, is left, by our Constitution to be determined by the courts in accordance with the general principles which govern courts in deciding whether rights of the accused, whether conferred by the Constitution or by statute or by the common-law, can be waived. The exceptional cases where State Constitutions have either enlarged or restricted the right of a person on trial for a criminal offence are only in the States of Arkansas, Minnesota, and Wisconsin, whose Constitutions declare that the right to a trial by jury may be waived in all cases.

Our Constitution, and those of all the other States, are silent on the right of the defendant in a criminal case to waive a trial by jury. These Constitutions neither enlarge nor restrict this right in a criminal case to waive a jury, but leave it to the courts, on common-law principles, to decide when this trial by jury can be waived, as well as any other right of a party conferred by law. And this right of waiver of a right of trial by a jury not being forbidden by our Constitution, or by that of other States, it would seem clear that, in a misdemeanor case, the accused could effectually exercise such right of waiver. if authorized to do so by statute law, and the power in such case was conferred on the court to hear and decide the case. The courts all agreed that in such case, upon general principles, the accused might waive such right, though they differed as to the right in a felony case for an accused, on general principles, to waive a trial by jury ; and that he can not do so in this State is plain, because our statute in no felony case authorizes a court to decide the case without the intervention of a jury, even when the accused waived in such a case, his right of trial by jury.

As I understand this question, whether a party accused of a crime or misdemeanor, when being tried before a court of record, can be permitted to waive a trial by a jury, our Constitution is entirely silent, in which respect it does not differ at all from the Constitutions of all the other States. In all of the States the Constitutions have left the right of parties

accused of crimes to waive a trial by jury, or any other right, to be determined by the courts on the general principles acted on by them in deciding whether in criminal cases the accused could effectually waive a particular right, whether conferred by the Constitution or by statute law or by the common-law, the only exception to this being in the Constitutions of Arkansas, Minnesota, and Wisconsin, and in these States this right to waive a trial by jury in a criminal case is not forbidden or restricted, but, on the contrary, is enlarged so as to include all cases whether the courts would therefore have permitted the defendant to effectually waive this right or not.

The assumption, in the opinions of Judges Woods and Johnson, that our Constitution differed from that of all the other States exccept North Carolina seems to me entirely groundless. The South Carolina Constitution provides that general assembly shall not enact any law that shall subject any person to punishment without trial of jury." "This obviously means precisely what is meant by our constitutional provision that the trials of crime and misdemeanors shall be by jury ;" and they are silent as to when, if permitted by law, an accused person might waive a trial by jury. This was left to be determined by the court on general principle governing the question of an accused person to waive aná right, whether constitutional, statutory, or imposed by the common-law.

The same may be said of the provision in the Georgia Constitution : "Every person charged with an offence against the laws shall have a public and speedy trial by an impartial. jury." It does not, on the question under consideration, differ from the provision in our Constitution "that trials of crimes and misdemeanors shall be by jury." This meaning of this provision of the Georgia Constitution is in no manner affected by another provision in the Georgia Constitution, not in ours, that, "in prosecutions before a justice, the accused shall have the right of trial by jury." It only shows that the constitutional convention of Georgia considered that the language, "Every person charged with an offence against the laws shall have public and speedy trial by an impartial jury," meant precisely thé same as that "every person charged with an offence against the laws shall have

a right to a public and speedy trial by an impartial jury." They obviously regarded a provision that every person accused of a crime "shall have trial by jury" as simply conferring on the accused a right of trial by jury. And so our Constitution must be interpreted. Whether this right of trial by jury can, if allowed by statute law, be waived, depends, not upon any provision to be found in our Constitution or in any other, but on the general principle of law governing the right of persons, in trials for crimes, to waive effectually particular rights conferred on them by the Constitution or laws. The same remarks obviously apply to the provisions of the Constitution of Texas that "in all criminal prosecutions the accused shall have a speedy public trial by an impartial jury." This provision has clearly the same meaning as the provision in our Constitution; and if the Texas Constitution is interpreted to confer on the accused a right of trial by jury, which in certain cases may be effectually waived if the statute-law authorizes it, our Constitution must be interpreted in the same manner. The Kansas Constitution provides that "the trial by jury shall remain inviolate;" and, again : "In all prosecutions, the accused shall have a speedy public trial by an impartial jury." This provision is obviously substantially the same as that in our Constitution; and if, under the Kansas Constitution, an accused may waive a trial by jury in a misdemeanor case if allowed to do so by statute-law, the accused should be allowed the same right to waive a jury in a misdemeanor case under our law and Constitution. There is nothing in the Constitution of this State, or that of any other State, which denies the right of the accused effectually to waive a trial by jury in a misdemeanor case if allowed to do so by statute law ; and no court has ever decided otherwise in any State. So far as the question is concerned, our Constitution is worded substantially as the Constitutions of South Carolina, North Carolina, Georgia, Kansas, and Texas. The positions assumed by Judges Johnson and Woods in their opinions, that the provision in our Constitution, "that the trials of crimes and misdemeanors shall be by a jury," differs, so far as it bears on the question under discussion, substantially from the provisions in any other Constitution ex-

cept that of North Carolina, has, in point of fact, no founda-
tion. On the contrary, our Constitution, so far as the point
in controversy is concerned, not only does not differ substan-
tially from the Constitutions of the States whose Constitu-
tions I have above quoted, but really does not differ sub-
stantially, in this respect, from the Constitutions of Ala-
bama, Arkansas, California, Colorado, Connecticut, Dela-
ware, Florida, Illinois, Iowa, Kansas, Minnesota, Mississippi,
Missouri, Nebraska, Nevada, New Jersey, New York, Ohio,
Pennsylvania, Rhode Island and Wisconsin. In each of
these States it is provided by their Constitutions that "the
right of trial by jury shall remain inviolate." The Consti-
tution of North Carolina has the same provision, but there
is added to it these words : "And the general assembly shall
not enact any law that shall subject any person to punish-
ment without trial by jury." Now, as I understand, this
last provision is nothing but a clear and distinct announce-
ment of the meaning of the phrase, "the right of trial by
jury shall remain inviolate," when applied to criminal cases.
And its meaning is precisely the same as that of our Con-
stitution, that "the trial of crimes and misdemeanors shall
be by jury." They all simply mean that the Legislature shall
pass no law whereby "in the trial of criminal cases, a jury
shall be dispensed with." If this were done, "the right of
trial by jury would not remain inviolate, nor would the trial
of crimes and misdemeanors be by jury." So that such an
act of the Legislature would violate the provisions of all the
State Constitutions as much as it would that of our Consti-
tution. But as all these Constitutions, as well as ours, are
silent as to the right of the accused to waive effectually the
trial by jury if allowed to do so by statute, I can not see that
a statute authorizing such waiver in misdemeanor cases vio-
lates any Constitution, as it has at all times and everywhere
been held that the accused, if authorized by law, had, in a
misdemeanor case, a right effectually to waive a jury, on
general legal principles governing the right of an accused to
waive rights. The whole opinions of Judges Johnson and
Woods are based on the assumption that our Constitution
is substantially different on this point from that of any other
State except North Carolina. This assumption being, it

seems to me, unfounded, the conclusion reached by them is unsound.

An historical review of our constitutional provision as to the trial of crimes and misdemeanors by juries, and of our statute law authorizing the parties to waive a jury, and authorizing the Circuit Court, when this is done, to try all felony cases, without the intervention of a jury, will, I think, demonstrate that there is no conflict between the statute and the Constitution on this point, and never has been in this State. In the first Constitution of Virginia, June 12, 1776, there is this provision in the bill of rights (section 8): "That in all capital or criminal prosecutions a man hath a right to a speedy trial by an impartial jury of his vicinage, without whose concurrence or consent he can not be found guilty." See 1 Rev. Code 1819, p. 32. This provision of our original bill of rights was again inserted, unaltered, in the amended Constitution of Virginia adopted January 14, 1830 (see Supp. Rev. Code, 16), and this same provision was again inserted, unaltered, in the amended Constitution adopted October, 1851. There was, then, this statute in the Code of Virginia of 1849. See chapter 162, § 38. "In any case, except a case of felony, in which a trial by jury would be otherwise proper, the parties or their counsel, by consent entered of record, may waive the right to have a jury, and thereupon the whole matter of law and fact may be heard and determined, and judgment given by the court." See Code Va., 1860, p. 693. This statute has always been in force in this State, it being re-enacted in the same words in the Code of 1869. See chapter 116, § 29, Code W. Va., 1868, p. 584; and Code W. Va., 1887, p. 760. This statute, so far as it conferred on Circuit Courts the power, where the right to have a jury was waived by the parties, to hear and determine, without the intervention of a jury, a misdemeanor case, is now for the first time claimed to be unconstitutional. It is not claimed that it violated the Constitution of Virginia, as it had always been, up to the formation of this State, the constitutional provision " that, in criminal prosecutions, a man hath a right to a trial by jury." But, when this State was formed, the language, with reference to the trial by jury in

criminal cases, was changed; and it is claimed now this change in our Constitution operated as a repeal of this statute so far as it authorized parties to waive a trial by jury in misdemeanor cases, and authorized, when this was done of record, the courts to hear and determine such misdemeanor cases without the intervention of a jury. The language of our bill of rights, in our first Constitution of 1863, is in these words: "The trial of crimes and misdemeanors shall be by jury." See Code W. Va. 1868, p. 21; article 2, § 8, Const. The courts of this State did not regard this provision of the Constitution as any way in conflict with this statute law in force when this State was formed; but, regarding it as a valid statute, our courts continued in misdemeanor cases, where the parties of record waived their right to a jury, to try and decide such cases without the intervention of a jury. This was the long-established practice in Virginia, and in all the other States where there was a statute authorizing it to be done. Nowhere was it held, or even claimed, to be in violation of any constitutional provision for a defendant in a misdemeanor case to be authorized effectually to waive his right of trial by jury. This right of waiver, on the part of a defendant, of a jury, was not forbidden or restricted by any provision in our Constitution, or in that of any other States, and the courts of this State, as everywhere else, held that such trial by jury in a misdemeanor case could be effectually waived where the statute expressly authorized, and there was nothing in the Constitution forbidding it.

In the Code of West Virginia of 1868 this statute was reenacted *verbatim*, and in the amended Constitution of this State ratified. In August, 1872, this provision of our original Constitution was again inserted in our Constitution, without alteration; the fourteenth section of article 3 of the Constitution of 1872 providing that " the trials of crimes and misdemeanors shall be by a jury." See Acts 1872–73, p. 7. When this provision was inserted in our new Constitution, the convention well knew that not only the Legislature, but the courts of this State, had universally interpreted this constitutional provision as not preventing one who was being tried for a misdemeanor from effectually waiving a trial by jury, and submitting the decision of the case to the court, if

the Legislature, by express statute, authorized the court, as it had done, to decide such case without the intervention of a jury. The convention which framed our Constitution of 1872, when it inserted this provision in the Constitution, must, of course, be regarded as intending it to have the meaning which has been continuously, since the formation of the State, put upon it both by the Legislature and the court. And if they had intended to forbid an accused person, in a misdemeanor case, to waive a trial by jury, they would have inserted such a provision in the Constitution; they knowing that the provision that had been so inserted had constantly been interpeted by the court as in no manner forbidding such accused person to waive his trial by jury. It is true, there had been no question of this sort ever raised by our Court, but it had been constantly treated as unquestionable that, under this provision in our Constitution, which had always been in force in this State, and under this statute law, which had also always been in force in this State, a defendant in a misdemeanor case could effectually waive his trial by jury, and the case be decided without the intervention of a jury. Whether, as now contended, this was a blunder on the part of the Legislature and the courts, or not, it seems to me can not be regarded as a question which can now be opened; for the convention which framed our Constitution knew well that this provision of the Constitution had been uniformly so interpreted by the courts. And they must be regarded as readjusting this provision with this well-known interpretation attached.

I have no fault to find with the general legal propositions laid down by Judge Woods as to the proper mode of construing constitutional provisions; but they seem to me to have no application to the case before us. It is true, as laid down by this Court in *Railroad Co.* v. *Miller*, 19 W. Va. 408, "that, when the text of a constitutional provision is plain and unambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument itself." But what application has this admitted law to the case before us? The words of our Constitution, by Art. VIII, § 12, Code 1887, p. 33, are: "The Circuit Court shall have jurisdiction of all crimes and misdemeanors, and such

other jurisdiction as may be prescribed by law;" and " trials of crimes and misdemeanors shall be by a jury of twelve men." Art. III, § 14, p. 19, Code 1887. Now, these provisions of the Constitution clearly forbid that the Legislature shall provide any other mode of trying crimes and misdemeanors except by the Circuit Courts, and also forbid the Legislature from providing by statute that such cases shall be tried without the intervention of a jury. This is the plain and unambiguous meaning of the language used.

But Judge Woods assumes that the plain and unambiguous language of the constitutional provision is not only this, but that it plainly means more,—that the accused in no criminal cases shall ever exercise his right of waiving the intervention of a jury when he is being tried in the Circuit Court. Now, I can not find in the language used in our Constitution anything to forbid an accused person who is being tried in the Circuit Court from exercising his universally admitted right of waiving a jury in a misdemeanor case, provided the Legislature in such case permits the court to decide the case. On the contrary, our Constitution, it seems to me, is entirely silent as to the right of an accused party on his trial to waive any right of any kind, including the right of trial by jury; and, this being the case, the accused may exercise such rights whenever the courts hold it to be his right, and the Legislature has made suitable provision for its exercise. The acquiescence of either the courts or the Legislature in a false construction of a constitutional provision, where its meaning is plain and unambiguous, ought not to control us, more especially when the judicial decisions have been rendered without the attention of the court being specially called to the language of the constitutional provision. But it is a very different case when a constitutional convention, as ours of 1872, adopts in the same words a constitutional provision of a former Constitution of the State which had been uniformlly interpreted, both by the Legislature and by the courts, as having a certain definite meaning. In such cases the courts can not put a different construction on a constitutional provision so adopted, even though they may think that this meaning, so placed on it, it may be without much consideration, was not its true mean-

ing. The constitutional convention must be regarded as meaning by the provision what had been regarded by the courts and Legislature as its meaning; and, in construing such constitutional provision, the whole object of the court is to place upon it the meaning which it is obvious was the one placed on it by the convention and by the people when it was adopted. We are not at liberty to put on it any other construction.

I concur with the conclusions reached by Judge Snyder in this case.

AFFIRMED.